NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-12-1664-KiTaD |
| | CC-13-1017-KiTaD |
| RONALD A. NEFF, | (cross appeals) |
| Debtor. | Bk. No. 11-22424-VK |
| RONALD A. NEFF, | |
| Appellant/Cross-Appellee, | |
| v. | **M E M O R A N D U M**[1] |
| DOUGLAS J. DENOCE, | |
| Appellee/Cross-Appellant, | |
| DAVID K. GOTTLIEB, Chapter 7 Trustee; WOODY FRANCIS; MICHAEL D. KWASIGROCH; JAMES JORDAN; KATHY JORDAN, | |
| Appellees. | |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed – February 4, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

Appearances:    Appellant and Cross-Appellee, Ronald A. Neff, and Appellee and Cross-Appellant, Douglas J. DeNoce, did not appear at oral argument.  Moriah Douglas Flahaut, Esq. of Arent Fox LLP argued for Appellee, David K. Gottlieb, Chapter 7 Trustee.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

Chapter 7[2] debtor Ronald A. Neff ("Neff") appeals an order sustaining the objection of creditor Douglas J. DeNoce ("DeNoce") to Neff's claimed disability homestead exemption of $175,000 under CAL. CODE CIV. P. ("CCP") § 704.730(a)(3)(B). He further appeals the bankruptcy court's denial of his request for an evidentiary hearing. DeNoce cross-appeals the exemption order, which overruled his objection under § 522(g)(1) to allow a standard homestead exemption of $75,000. We AFFIRM in part and VACATE and REMAND in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Events prior to Neff's first bankruptcy case

In 2007, Neff, a former dentist, treated DeNoce[3] with the surgical placement of eight dental implants. It was a major full-day surgery. Within a month or so, each tooth had either fallen out or failed. Neff performed further surgery to correct the eight implants, but, within a couple of months, each fell out or failed again. DeNoce still apparently suffers from the improper implant procedures. In October 2008, DeNoce filed suit against Neff in state court for medical malpractice. Ultimately, DeNoce was awarded a judgment of $310,000.

In March 2008, a few months prior to DeNoce filing the

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "Civil Rules."

[3] Mr. DeNoce, a former attorney, was disbarred by the California State Bar in 1997.

-2-

medical malpractice action, Neff executed a revocable living trust (the "Retirement Trust"). The trust res consisted solely of certain real property (the "Lake Harbor Property"), which Neff had owned since 1978 and which was free and clear of any liens. According to Neff, after executing the Retirement Trust at his attorney's office, he was sent home to prepare a quitclaim deed transferring the Lake Harbor Property from himself to the Retirement Trust. It is undisputed, however, that the quitclaim deed was not recorded until two years later on April 7, 2010. During this time, Neff lived in another home he owned (the "Poinsettia Property"), which was subject to a mortgage lien.

Before and during his treatment of DeNoce, Neff was under investigation by the dental board for allegedly diverting and/or using controlled substances or prescribed drugs, particularly, Vicodin. In December 2008, Neff closed his long-time dental practice. In February 2009, he began renting dental office space with another dentist, working just one day per week.

Neff's dental license was eventually revoked by the California dental board in January 2010 due to his substance abuse and other issues. At the license revocation hearing in October 2009, Neff testified that he wanted to continue practicing dentistry, even under a probationary license if necessary, and that he was hoping to see patients one additional day each week.

**B.   Neff's first bankruptcy case**

Neff filed his first chapter 13 bankruptcy case on March 4, 2010 (the "First Bankruptcy Case"). It was dismissed on April 9, 2010, for Neff's failure to appear at the § 341(a) meeting of creditors.

**C.   Neff's second bankruptcy case**

Neff filed his second chapter 13 bankruptcy case two months later on June 18, 2010 (the "Second Bankruptcy Case"). Neff reported the Poinsettia Property in his Schedule A with a value of $350,000 and a secured claim of $403,000. In his Schedule B, Neff reported that the Retirement Trust owned the Lake Harbor Property valued at $350,000. In his Schedule C, Neff claimed a standard homestead exemption of $75,000 on the Poinsettia Property, and he further claimed that the Retirement Trust and Lake Harbor Property were fully exempt as retirement assets. In his Schedule I, Neff reported that his monthly income consisted of private disability payments and trust income derived from renting the Lake Harbor Property. Neff did not disclose the recent transfer of the Lake Harbor Property in Question 10 of his Statement of Financial Affairs ("SOFA").

On the same day the Second Bankruptcy Case was filed, DeNoce filed suit against Neff in state court to set aside what he contended was a fraudulent transfer of the Lake Harbor Property. That matter was stayed due to the Second Bankruptcy Case.

During a hearing on Neff's motion to continue the automatic stay, the bankruptcy court (Judge Thompson) became aware of Neff's transfer of the Lake Harbor Property to the Retirement Trust on April 7, 2010, while his First Bankruptcy Case was pending. Facing resultant dismissal, Neff agreed to record a quitclaim deed transferring the Lake Harbor Property back to himself. On July 30, 2010, Judge Thompson entered an order (the "Judge Thompson Order") granting Neff's motion to continue the stay, which also expressly provided:

> Debtor Ronald Neff shall record a deed to the Lake Harbor Lane property back into his own name as an individual, and this recording shall take place no later than the close of business Tuesday August 3, 2010. If not done by the said date, this case shall be dismissed.

Neff recorded a quitclaim deed transferring the Lake Harbor Property back into his name on August 4, 2010.

On August 10, 2010, Neff filed his first set of amended Schedules A, B, C, F, I and J, and a first amended SOFA. Notably, Schedule A reported that Neff owned both the Lake Harbor Property and the Poinsettia Property, each valued at $350,000, with a secured claim against the Poinsettia Property for $403,000. In his Schedule C, Neff still claimed a standard homestead exemption of $75,000 for the Poinsettia Property and further claimed that the Lake Harbor Property was fully exempt as a retirement asset under CCP § 704.115(b). In his first amended SOFA, Neff reported both the initial and subsequent transfers of the Lake Harbor Property. Neff later testified that on the day he filed his first amended schedules and SOFA, he decided to move out of the Poinsettia Property and move into the Lake Harbor Property, which was now his primary residence.[4] He had made this decision around 1:00p.m., after he filed the amended documents.

**The Rule 2004 motions and the motion to dismiss the Second Bankruptcy Case**

In September 2010, DeNoce moved to dismiss the Second Bankruptcy Case for bad faith, contending that it should be dismissed for, among other things, the alleged fraudulent transfer

---

[4] Neff stated in a declaration that he decided to move to the Lake Harbor Property because he had lost his license to practice and that property had no mortgage, it was smaller and easier to maintain, and had lower monthly servicing fees.

-5-

of the Lake Harbor Property that occurred during his First Bankruptcy Case and Neff's valuing the Poinsettia Property at only $350,000 when Zillow.com estimated the home's value at $719,000.

On September 16, 2010, Neff filed a second set of amended Schedules B and C. His Schedule B disclosed a recently-filed suit against his homeowners association ("HOA") for a claim regarding mold infestation of the Poinsettia Property, which he valued at $1.2 million ("Mold Litigation").[5] In his Schedule C, Neff now claimed a homestead exemption for the Lake Harbor Property, as opposed to the Poinsettia Property, and for the enhanced amount of $175,000 due to disability under CCP § 704.730(a)(3)(B).

On November 30, 2010, DeNoce moved to further amend prior Rule 2004 orders so he could examine Neff about his alleged disability and his claimed enhanced homestead exemption. Although the bankruptcy court had previously denied DeNoce access to Neff's medical and/or disability records, DeNoce contended that such information was necessary to determine the legitimacy of Neff's claimed disability. Judge Kaufman, who was later assigned the Second Bankruptcy Case, granted DeNoce's motion on May 31, 2011.

---

[5] DeNoce had contended that the basis for the Mold Litigation was completely fabricated so Neff could claim the Poinsettia Property was worth only $350,000 when it, according to DeNoce (using Zillow.com), was worth $719,000. The chapter 7 trustee ultimately sold the Poinsettia Property for $550,000.

As for the Mold Litigation, a case filed by Neff's neighbor, who had lodged a similar complaint against the HOA, was dismissed for non-suit. Neff's mold case was dismissed twice for procedural reasons. When the case was reinstated for a third time, Neff failed to submit any discovery to the HOA, despite numerous extensions given, and he failed to comply with a subsequent discovery order. After languishing for over a year with no discovery ever being produced by Neff, the HOA moved for terminating sanctions, which the state court granted on January 4, 2012. A judgment striking Neff's complaint and awarding the HOA sanctions of $930.00 was entered on March 23, 2012.

-6-

The bankruptcy court held four evidentiary hearings on the motion to dismiss the Second Bankruptcy Case on May 31, June 17, September 26,[6] and October 19, 2011. At the May 31 hearing, Neff conceded that he had not listed the April 7, 2010 transfer of the Lake Harbor Property in his amended SOFA filed on July 19, 2010. When DeNoce characterized the Judge Thompson Order as an "order" to transfer the Lake Harbor Property back into Neff's name, Neff disagreed, contending that he "voluntarily offered" to transfer it back, and that he was not under a court order to do so. Upon further pressing by DeNoce that Neff was in fact "ordered" to transfer the property back, the court interjected and the following colloquy ensued:

> THE COURT: She didn't make an order. The Court read the ruling. It wasn't an order. It was an indication of the consequence of refusing to transfer it back.
>
> . . .
>
> THE COURT: So, it's there, but it wasn't an order that was made during that hearing. But she definitely did talk about it as something that would have been, you know, in her sense inappropriate during the pendency of his bankruptcy, his prior one. So — but I just don't think you should refer to it as an order because it wasn't an order.
>
> MR. DENOCE: There was an order.
>
> THE COURT: Well, it wasn't an order at the time.
>
> MR. DENOCE: There was an order after the hearing.
>
> THE COURT: Because I think that was put into the order.

Hr'g Tr. (May 31, 2011) 132:10-12; 132:24-133:9.

---

[6] We do not have a transcript from the September 26, 2011 hearing in the record. However, on September 27, 2011, the chapter 13 trustee also moved to dismiss Neff's Second Bankruptcy Case for a variety of reasons, including an objection to Neff's use of the Lake Harbor Property as a retirement vehicle, and because Neff had insufficient income to fund a plan.

-7-

At the June 17, 2011 evidentiary hearing, DeNoce asked Neff why he had not claimed the disability homestead exemption in his initial Schedule C filed on July 19, 2010. Neff testified that he had subsequently seen a psychiatrist with the Social Security Administration (the "SSA"), and the psychiatrist had indicated that he was approving Neff's disability for mental health reasons. When asked why he had not claimed the disability homestead exemption in his first amended Schedule C filed on August 10, 2010, Neff testified that although he was disabled at that time and had been receiving benefits from a private disability insurer for the past two years, he did not receive a disability benefit determination from the SSA until September 2010, after the first amended Schedule C had been filed in August 2010. So, in his mind, his disability had now been approved by the SSA, which prompted filing the second amended Schedule C in September 2010.

When asked further about his mental condition, Neff testified that he suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and Post-Traumatic Stress Disorder ("PTSD"). The PTSD was a result from being repeatedly raped as a child. Neff admitted that he had not dealt with this issue until he sought treatment for his alcoholism. Neff also testified about his physical disabilities, stating that on August 10, 2010, and currently, he suffered from degenerative disc disease, osteoarthritis, spondylosis, stenosis in his vertebral column, bulging discs, herniated discs, sciatica and shooting pains. In summary, Neff testified that his claimed disability homestead exemption was based both on his physical and mental disabilities.

The bankruptcy court held a final evidentiary hearing on the

motion to dismiss on October 19, 2011. When questioned further about the SSA's disability benefit determination, Neff testified that he was required to see an SSA doctor, and that his benefit determination was based on this doctor's report. Neff testified that he knew of no other doctor who had issued an opinion that he was not fully disabled.

After a brief recess, Neff's counsel informed the bankruptcy court that Neff was not physically or mentally up for any further questioning, and that he agreed to withdraw his opposition to the motion to dismiss as long as he was not barred from filing a chapter 7 case. The bankruptcy court accepted his withdrawal and orally granted the motion dismissing the Second Bankruptcy Case. It entered the related order on November 14, 2011.

While the motion to dismiss the Second Bankruptcy Case was pending, DeNoce had filed a first amended nondischargeability complaint against Neff on July 22, 2011, seeking to except his debt from discharge under § 523(a)(6). Once Neff's Second Bankruptcy Case was dismissed, however, DeNoce's § 523 action also was dismissed.

**D. Neff's third bankruptcy case and DeNoce's objection to the disability homestead exemption**

Neff filed a chapter 7 bankruptcy case on October 24, 2011, (the "Third Bankruptcy Case"), before the order dismissing the Second Bankruptcy Case was entered on November 14. David K. Gottlieb was appointed trustee. In his Schedule C, Neff claimed a disability homestead exemption of $175,000 against the Lake Harbor Property.

On August 24, 2012, DeNoce filed an objection to Neff's

-9-

claimed homestead exemption ("Exemption Objection"). In short, DeNoce contended that Neff was able to work and was not disabled. DeNoce conceded that Neff was receiving disability benefits from two sources — the SSA and Northwestern Mutual ("Northwestern"), his private insurer, which raised the presumption. However, DeNoce argued that the Northwestern benefits did not create any presumption, because Neff had admitted these payments were based on losing his dental license, not because of any physical disability. In addition, argued DeNoce, the two doctors who Neff had said found him "totally disabled" — Dr. Goldsmith, the SSA psychiatrist, and Dr. Hersel, his pain management doctor of many years — had opined that Neff could work 16-20 hours per week. Neff's primary doctor, Dr. Chatoff, also had opined that he could work 20 hours per week. Finally, argued DeNoce, Neff had testified at his Rule 2004 examination on August 8, 2011, that although his dental license had been revoked, he was capable of working other jobs in the dental field not requiring a license, but that he was unable to look for work due to his pending legal matters.

DeNoce disputed Neff's claim of a mental disability, which was the sole basis for his SSA disability benefits, arguing that such claim was suspect. First, argued DeNoce, Neff had not sought SSA benefits until March 2010 when he filed his First Bankruptcy Case. Second, the report from the SSA doctor, dated July 2010, was the only documentation of Neff's PTSD/childhood rape claim.

Notably, despite DeNoce's many references to the transcripts from Neff's Rule 2004 examinations conducted during the Second Bankruptcy Case and the various alleged medical reports and

-10-

letters, he failed to submit any of them with the Exemption Objection.[7]

Alternatively, DeNoce argued that Neff was not entitled to even a standard homestead exemption of $75,000, because he had fraudulently and voluntarily transferred the Lake Harbor Property to the Retirement Trust, concealed the transfer, and the transfer was avoided when Judge Thompson ordered him to transfer it back.[8]

Neff opposed the Exemption Objection and requested an evidentiary hearing. In short, he contended that his disability payments from the SSA and Northwestern created the presumption that he was fully disabled and thus he was entitled to the disability homestead exemption under CCP § 704.730(a)(3).

In his declaration in support, Neff stated that the SSA doctor had deemed him fully disabled, and that he was receiving monthly SSA disability benefits as a result. Like DeNoce, he too did not include a copy of this report with his brief. But, he did include the first page of his benefit determination letter from the SSA, dated August 30, 2010. The SSA letter stated that Neff's records indicated he became disabled on January 30, 2007, which was just days after dental board investigators came to his office to confront him with the substance abuse allegations. The SSA

---

[7] Volume III of the Rule 2004 transcripts, which contains Neff's August 8, 2011 testimony about his disability, was filed under seal, and we have no copy of it in the record. In reviewing the bankruptcy court's ruling, it apparently did not review it either, accepting what DeNoce had said about them as true.

[8] Notably, the chapter 7 trustee, who filed an appeal brief in support of the bankruptcy court's decision to deny the enhanced homestead exemption, did not object to Neff's claimed exemption or join in DeNoce's objection.

-11-

letter further stated that Neff was entitled to monthly SSA benefits as of March 2009, based on his filing date for benefits of March 2, 2010. Also attached to his opposition was a copy of a recent report from a Dr. Okhovat, an associate of Dr. Hersel's, dated August 28, 2012. This report was the result of a July 31, 2012 examination required by Northwestern for continued disability benefits payments. Dr. Okhovat's report stated that Neff was "unable to work" in either his normal occupation or in any other, and that his prognosis for Neff's inability to work was "indefinite."

As for DeNoce's objection under § 522(g)(1) to even a standard $75,000 homestead exemption, Neff countered that he had not engaged in a fraudulent conveyance, but that issue was moot in any event because he voluntarily returned the Lake Harbor Property to the estate.

In his reply to the Exemption Objection, DeNoce noted that Neff had failed to respond to his own Rule 2004 testimony, where he stated that he could work in other jobs in the dental field, or attempt to rebut the doctor reports stating that he could work at least part time. On that issue, DeNoce (now) attached a variety of documents from Northwestern and what appears to be the earlier-referenced report from Dr. Hersel, dated March 28, 2008, which stated that Neff's physical ailments prevented him from performing dentistry for more than 16-20 hours per week. In a partial letter to Neff from a Northwestern representative dated January 5, 2010, the representative stated that Neff's report of working 24 hours per week in his request for benefits did not match what he had told a claims investigator on January 31, 2007, which was that he

-12-

was working 32 hours per week. In another letter from this same representative dated May 19, 2010, the representative stated that to be considered totally disabled and receive lifetime benefits, Neff had to prove his disability was due to a "medical" condition (as opposed to losing one's license to practice), and that he had not yet shown a medical disability based on the records submitted.

Also included in DeNoce's reply were copies of disability payment statements Neff had received from Northwestern between October 30, 2010 and May 30, 2011, showing his disability status as "partial." DeNoce also again referenced the report from the SSA doctor dated July 2010, but did not include it with his reply. This report allegedly showed that Neff's PTSD was only "mild," and that he was "slightly to moderately" impaired.

To refute the recent report from Dr. Okhovat, DeNoce claimed that Neff had been a patient of Dr. Hersel's (who is in the same office as Dr. Okhovat) for twenty years and could get these doctors to write up pretty much whatever he wanted. To support his contention, DeNoce included a copy of a handwritten note from Neff to Dr. Hersel dated March 11, 2007, asking Dr. Hersel to sign off on an enclosed typewritten letter drafted by Neff, which was to be inserted on Dr. Hersel's letterhead and presented to the state court judge presiding over Neff's 2006 DUI case.

The bankruptcy court held a hearing on the Exemption Objection on October 23, 2012. After noting that DeNoce had failed to include any copies of the Rule 2004 examination transcripts referenced in his moving papers, the bankruptcy court announced its findings:

It seems to me that . . . in looking at the case law on

-13-

what's required for an enhanced disability exemption, it seems to me that Doctor Neff doesn't meet that standard, that he admitted in his 2004 exam that he could work. He just can't be a dentist right now because his license has been revoked.

And his insurance through Northwestern is based primarily – well, solely on the fact that he lost his license to be a dentist. And he filed two cases where he didn't claim any enhanced disability . . . .

And that when I look at at least what's been excerpted and the objection and the reply, it references the fact that he can work. So he isn't entitled – and the fact that he gets Social Security benefits may create a presumption, but it doesn't mean it can't be refuted. And when I look at the total record or at least what's been excerpted, it looks like he can work. He doesn't meet the standard to be precluded from substantial gainful employment, which is required for him to have an enhanced disability . . . exemption.

. . .

And never was it really made clear what kind of disability he's claiming. I mean, it's – all we have is a letter from the [SSA]. And also, it just seems bizarre to me that we know he's been working since that time.

I mean, the letter was like, well, you're going to be disabled from 2009, but he works after that. So I don't find that letter to be meaningful at all. And I don't find the fact that . . . Northwestern is providing him insurance based on losing his license is any evidence of disability.

Hr'g Tr. (Oct. 23, 2012) 3:24-4:23; 5:11-21. In response, counsel for Neff again requested an evidentiary hearing, stating that he would have a doctor come in and testify as to Neff's ailments. The court asked why the doctor's declaration was not submitted with his opposition. Counsel said that Dr. Okhovat's report was submitted. The court agreed, but noted that his report was not a declaration, and that Neff appeared able to get these particular doctors to sign whatever he gave them. The court further noted that the only party to submit a declaration was Neff, and it "[did not] find him to be very convincing." Id. at 8:2-3.

-14-

In denying Neff's request for an evidentiary hearing, the court further stated:

> I mean, I don't think an evidentiary hearing is a chance to redo stuff you should have done – an evidentiary hearing is a chance to have the witnesses, based on the declarations that were presented, come into court. I don't need . . . Doctor Neff for that. I already saw Doctor Neff for days on the motion to dismiss his prior Chapter 13 case that he consented to.
>
> . . .
>
> I don't understand the point of an evidentiary hearing if all we have is Doctor Neff, who attaches a letter from the [SSA], which I don't find too particularly convincing, knowing that he didn't claim the disability exemptions in the last two cases for the homestead he was claiming at the time, and that the information from Northwestern indicates that just because he lost his license – and he admitted in his 2004 exam that he could work.

Id. at 8:9-15; 10:1-9.

Upon that ruling, the bankruptcy court sustained DeNoce's objection to the claimed disability homestead exemption. It summarily overruled his objection under § 522(g)(1), making no findings on the matter. An order consistent with the court's ruling was entered on December 17, 2012 (the "Exemption Order"). The Exemption Order stated that the court had determined Neff was able to engage in "substantial gainful employment" under CCP § 704.730(a)(3)(B), and that the evidence presented overcame the presumption of disability notwithstanding Neff's award of SSA disability benefits. Neff was allowed the standard homestead exemption of $75,000. Cross-appeals of the Exemption Order followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

-15-

## III. ISSUES

1.   Did the bankruptcy court err when it sustained DeNoce's objection to Neff's claimed disability homestead exemption under CCP § 704.730(a)(3)(B)?

2.   Did the bankruptcy court err in overruling DeNoce's objection under § 522(g)(1)?

## IV. STANDARDS OF REVIEW

The right of a debtor to claim an exemption is a question of law we review de novo. Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003). The bankruptcy court's findings of fact with respect to a claimed exemption are reviewed for clear error. Id. Factual findings are clearly erroneous if illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citation omitted).

We review the bankruptcy court's decision not to conduct an evidentiary hearing for abuse of discretion. Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 629 (9th Cir. BAP 2010). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We can affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989).

-16-

## V. DISCUSSION

**A. The bankruptcy court erred when it sustained DeNoce's objection to Neff's claimed disability homestead exemption.**

"Exemptions serve to protect and foster a debtor's fresh start from bankruptcy." In re Rolland, 317 B.R. 402, 412-13 (Bankr. C.D. Cal. 2004). A claimed exemption is "'presumptively valid.'" Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)(citation omitted). Once an exemption has been claimed, "the objecting party has the burden of proving that the exemptions are not properly claimed." Rule 4003(c); Gonzalez v. Davis (In re Davis), 323 B.R. 732, 736 (9th Cir. BAP 2005)(Klein, J., concurring). Initially, this means the objecting party has the burden of production and the burden of persuasion. Carter, 182 F.3d at 1029 n.3. If the objecting party produces evidence to rebut the presumptively valid exemption, the burden of production then shifts to the debtor to go forward with unequivocal evidence to demonstrate the exemption is proper. Id. (citation omitted). The burden of persuasion, however, always remains with the objecting party. Id.

California has opted out of the federal exemption scheme and permits its debtors only the exemptions allowable under state law. § 522(b)(2), (3); CCP §§ 703.010(a), 703.130. Therefore, while "the federal courts decide the merits of state exemptions, . . . the validity of the claimed state exemption is controlled by the applicable state law." In re Kelley, 300 B.R. at 16. California exemptions are to be broadly and liberally construed in favor of the debtor. In re Gardiner, 332 B.R. 891, 894 (Bankr. S.D. Cal. 2005).

The issue here is whether Neff was entitled to claim an enhanced homestead exemption under CCP § 704.730(a)(3)(B). That statute allows a homestead exemption of $175,000 if,

> the judgment debtor . . . who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

> A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment.

CCP § 704.730(a)(3)(B) sets forth a two-part test to determine if a debtor is eligible for the disability exemption: the debtor must (1) have a physical or mental disability; and (2) as a result of that disability, be unable to engage in substantial gainful employment. Cases interpreting the statute are clear: the homestead exemptions set forth in CCP § 704.730(a) are dependent upon whether "the debtor is eligible for an exemption as of the date of the petition." In re Rostler, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994)(citing In re Dore, 124 B.R. 94, 98 (Bankr. S.D. Cal. 1991)(holding that exemption rights are fixed as of the petition date); In re Rolland, 317 B.R. at 420. See also Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 548 (9th Cir. BAP 2009)(a debtor's entitlement to an exemption is determined based upon facts as they existed at the time of the bankruptcy filing).

Because Neff was receiving SSA disability benefits at the time he filed his Third Bankruptcy Case, he was entitled to a presumption that he was disabled and unable to engage in

-18-

substantial gainful employment within the meaning of the statute.

As for the first element of CCP § 704.730(a)(3)(B), the bankruptcy court did not expressly find that Neff was not suffering from a disability at the time, whether it be mental or physical, although it certainly hinted. However, if its decision could be construed as such, this was erroneous, because DeNoce failed to sufficiently rebut Neff's evidence supporting his disability status — the SSA benefits he was receiving based on his mental disability, and his unrefuted testimony about both his physical and mental disabilities. Pure speculation about whether Neff's mental disability claim is "bogus" is not evidence, and certainly not enough to sufficiently rebut the presumption or even shift the burden to Neff.

The bankruptcy court did, however, expressly find against Neff on the second element of CCP § 704.730(a)(3)(B), concluding that DeNoce had overcome the presumption and that Neff's disability did not render him unable to engage in "substantial gainful employment." Neff contends on appeal that the bankruptcy court erred in sustaining DeNoce's objection by (1) considering evidence not relevant to the date the Third Bankruptcy Case was filed, (2) disregarding his SSA disability benefits and failing to apply the presumption that he was unable to engage in substantial gainful employment, and (3) disregarding Dr. Okhovat's August 28, 2012 report stating that Neff was unable to work. As for his last argument, the bankruptcy court was not required to consider the August 28, 2012 Dr. Okhovat report, because Neff's entitlement to the disability homestead exemption is determined based upon facts as they existed at the time he filed his Third Bankruptcy Case,

-19-

not nearly one year afterward.  However, we agree with his other two arguments.

CCP § 704.730(a)(3)(B), enacted in 1991, does not define the term "substantial gainful employment," and California decisions have provided little guidance for interpreting it.  In re Rostler was the first court to define the term.  The court began by reviewing the rebuttable presumption found in the statute. 169 B.R. at 412.  To qualify for benefits under the SSA, one must be unable to engage in "substantial gainful activity."  Because the statutory presumption refers to the Social Security Act, and the operative language there and the California statute are virtually identical, the court looked to cases interpreting the Act to define the term "substantial gainful employment."  Id. Looking to Corrao v. Shalala, 20 F.3d 943 (9th Cir. 1994), for guidance, the court determined that to satisfy the second element of CCP § 704.730(a)(3)(B), the debtor must have been, at the time of petition, unable to "(1) perform meaningful mental or physical work-related activity; (2) in a competitive or self-employed position; (3) that normally results in pay or profit." In re Rostler, 169 B.R. at 413; In re Rolland, 317 B.R. at 420.

In reviewing the language of § 704.730(a)(3)(B), we observe that the term "gainful employment" is qualified by the adjective "substantial."  Work activity is "substantial" if it involves significant physical or mental activities.  In re Rostler, 169 B.R. at 412 (citing Corrao, 20 F.3d at 946)).  Thus, it would appear that from the statute and test set forth in In re Rostler that "any work" or "part-time work" may not necessarily rise to the level of "substantial" or "gainful" employment.  See

-20-

_In re Morris_, 2010 WL 9485973, at *4 (Bankr. E.D. Cal. Oct. 7, 2010). The term "substantial" also modifies the term "gainful," which suggests that the debtor must be physically, mentally and emotionally able to work enough hours, at a high enough net wage, to contribute materially to his or her support. _See_ _id._

As the objecting party, DeNoce was required to rebut the presumption that, <u>as of the petition date</u>, Neff was unable to engage in "substantial gainful employment" — i.e., that he had the ability to perform meaningful mental or physical work-related activity, in a competitive or self-employed position, which normally results in pay or profit, and that Neff was physically, mentally and emotionally able to work enough hours, at a high enough net wage, to contribute materially to his support. Neff's level of disability, whether only "partial" or "full," does not control the outcome of whether he is eligible for a disability homestead exemption. The pertinent question is whether his disability rendered him unable to engage in substantial gainful employment at the time he filed the Third Bankruptcy Case.

The bankruptcy court determined that the evidence presented sufficiently rebutted the presumption that Neff was unable to engage in substantial gainful employment: "And that when I look at at least what's been excerpted and the objection and the reply, it references the fact that he can work. . . . And when I look at the total record or at least what's been excerpted, it looks like he can work. . . . And also, it just seems bizarre to me that we know he's been working since that time. I mean, the letter was like, well, you're going to be disabled from 2009, but he works after that. So I don't find that letter to be meaningful at

-21-

all. . . .   He doesn't meet the standard to be precluded from substantial gainful employment . . . ."  Hr'g Tr. (Oct. 23, 2012) 4:10-12; 4:14-16; 4:14-18; 4:16-17.

We disagree that DeNoce met his initial burden here, much less rebutted the presumption.  DeNoce had both the burden of persuasion and production to prove that Neff was able to engage in "substantial gainful employment" at the time he filed his Third Bankruptcy Case.  The fact that Neff was receiving SSA disability benefits only added to DeNoce's burden.  In his Exemption Objection, DeNoce referenced three doctors' reports, all of which he claimed opined that Neff could work a range of 16-20 hours per week.  However, DeNoce failed to submit any of these reports with his Exemption Objection.  In his reply, he submitted what appears to be Dr. Hersel's report dated March 28, 2008, which states that Neff would be "unable to practice dentistry beyond sixteen or twenty hours per week."  This report offers virtually no support, because it precedes the Third Bankruptcy Case by over three years, and because it states only that Neff was unable to practice "dentistry" for more than 16-20 hours per week.  As of January 2010, Neff was unable to practice dentistry for any number of hours because his license to practice dentistry had been revoked.  The Hersel report also precedes the SSA benefit determination letter.  Neff's 2009 statement to the dental board that he would like to work one additional day per week (besides the one day per week he was working at the time, which may or may not be "substantial"), and the statements he made to a Northwestern claims investigator about how many hours he worked in 2007 are likewise "stale."

-22-

The only probative "evidence" supporting DeNoce's Exemption Objection was Neff's Rule 2004 testimony from August 8, 2011, where he stated that he could work in other careers in the dental field that did not require a license (such as a dental assistant or reviewing dental claims for an insurance company), but that his legal troubles were precluding him from committing to a job. This testimony was given just two months before he filed his Third Bankruptcy Case. Notably, however, Neff never testified as to how many hours he could work at these alternative jobs. Thus, whether these jobs could provide "substantial gainful employment" is unknown. In any event, DeNoce failed to submit this (or any other) portion of the referenced Rule 2004 transcript to the bankruptcy court.

The bankruptcy court found great significance in the fact that Neff continued to work after the SSA's retroactive disability date of March 2009. However, the only evidence before the court on that issue was Neff's unrefuted testimony that in 2009, the year prior to losing his license, he had already cut his practice down to one day per week due to his disability. The court did not explain how this minimal "work," or the fact that Neff admitted he "could work," rose to the level of "substantial gainful employment" within the meaning of the statute.

Accordingly, because the bankruptcy court's decision to sustain DeNoce's objection to Neff's claimed disability homestead exemption under CCP § 704.730(a)(3)(B) is not supported by adequate findings, we VACATE and REMAND the Exemption Order in part. As a result, we need not address Neff's argument that the bankruptcy court abused its discretion in denying his request for

-23-

an evidentiary hearing.

**B.   The bankruptcy court did not err when it overruled DeNoce's objection under § 522(g)(1).**

Section 522(g) limits the ability of a debtor to claim an exemption where the trustee has recovered property for the benefit of the estate.  Under § 522(g)(1), a debtor may claim an exemption where the trustee has recovered property under §§ 510(c)(2), 542, 543, 550, 551 or 553 only if (1) the property was involuntarily transferred, and (2) the debtor did not conceal the transfer or an interest in the property.  See Hitt v. Glass (In re Glass), 164 B.R. 759, 761 (9th Cir. BAP 1994), aff'd, 60 F.3d 565 (9th Cir. 1995).

Although DeNoce has cross-appealed the Exemption Order, he does not articulate any specific argument as to how the bankruptcy court erred in overruling his objection under § 522(g)(1), and he does not complain about the lack of any findings on the matter.

The Exemption Objection was a "contested matter" subject to Rule 9014.   9 COLLIER ON BANKRUPTCY ¶ 4003.03[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2013).  As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision.  See Rule 9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52).  These findings must be sufficient to indicate the factual basis for the court's ultimate conclusion.  Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985).

In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).

-24-

However, even when a bankruptcy court does not make formal findings, we may conduct appellate review "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919-20 (9th Cir. BAP 2011)(citations omitted). While an absence of findings is regrettable, it does not preclude us from reviewing this matter. The factual record is undisputed and sufficiently established.

As much as DeNoce wishes to argue the importance of the events that occurred during Neff's Second Bankruptcy Case, the case relevant to this issue is his Third Bankruptcy Case. The transfer of the Lake Harbor Property from Neff to the Retirement Trust occurred on April 7, 2010. It is undisputed that this transfer was voluntary. We further conclude that the Judge Thompson Order was not an "order" that directed Neff to transfer the Lake Harbor Property back into his name, but rather he "voluntarily" undertook the task of transferring it back into his name during his Second Bankruptcy Case. On the day Neff filed his Third Bankruptcy Case, the Lake Harbor Property was in his name and was, therefore, property of the estate. He even reported it in his Schedule A. Section 522(g) applies only to property restored to the estate, not property already in the estate on the date of filing. In re Osborn, 346 B.R. 204, 206 (Bankr. N.D. Cal. 2006)(citing In re Glass, 60 F.3d at 568). Thus, the statute does not apply.

Further, if one takes DeNoce's contention that the Retirement Trust was an invalid self-settled trust to its logical conclusion,

-25-

then Neff's interest in the Lake Harbor Property was never "effectively" transferred and was always property of the estate, even in his Second Bankruptcy Case. Accordingly, the trustee had nothing to recover.

Alternatively, even if the transfer of the Lake Harbor Property was a recoverable transfer within the meaning of § 522(g), and even if the Judge Thompson Order was interpreted as an "order" to recover it, DeNoce has failed to cite any authority that a recovery by anyone other than the trustee satisfies the statute. The First Circuit BAP has held otherwise, concluding that applying § 522(g) to a creditor's prepetition recovery of transferred property is inconsistent with the statute's plain meaning:

> The statute specifically provides who must recover the property, how the property is to be recovered, and the debtor's limitations, in order for a debtor to claim exemption rights in property recovered by the trustee. The language of § 522(g), in this regard, is plain and unambiguous, and thus, our function is to "enforce it according to its terms." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). The term "creditor" is not used interchangeably with the term "trustee" in the Bankruptcy Code.
>
> . . .
>
> In view of the above, the Panel finds that the bankruptcy court erred in sustaining the objection to the claimed exemption pursuant to § 522(g) in favor of Stornawaye because the transfer was caused pre-petition by a creditor acting for its own benefit, and not by the trustee's action under §§ 510(c)(2), 542, 543, 550, 551, or 553 of the Bankruptcy Code.

Stornawaye Fin. Corp. v. Hill (In re Hill), 387 B.R. 339, 348 (1st Cir. BAP 2008). Further, although we did not expressly hold in In re Glass that § 522(g) is not applicable when someone other than the trustee recovers transferred property to the estate, we did

-26-

hold that "where a debtor voluntarily transfers property in a manner that triggers the trustee's avoidance powers or the debtor knowingly conceals a prepetition transfer or an interest in property, <u>and such property is returned to the estate as a result of the trustee's actions</u> directed toward either the debtor or the transferee, the debtor is not entitled to claim an exemption under § 522(g)(1)." 164 B.R. at 754-65.

Therefore, an objection under § 522(g)(1) appears precluded where property has been returned to the estate as a result of the actions by a non-trustee, which would include a creditor or the bankruptcy court. We further note that even the chapter 7 trustee supports a standard homestead exemption for Neff of $75,000.

Accordingly, we conclude that the bankruptcy court did not err when it overruled DeNoce's objection under § 522(g)(1).

## VI. CONCLUSION

While the bankruptcy court properly overruled DeNoce's objection under § 522(g)(1), its decision to sustain his objection to Neff's claimed disability homestead exemption under CCP § 704.730(a)(3)(B) is not adequately supported by the record. As such, we AFFIRM the Exemption Order in part and VACATE and REMAND it in part.