**In re WIRE ROPE CORPORATION OF AMERICA, INCORPORATED, Debtor.**

No. 02–50493–JWV.

United States Bankruptcy Court, W.D. Missouri.

Oct. 8, 2003.

***ORDER***

JERRY W. VENTERS, Bankruptcy Judge.

This matter comes before the Court on Wire Rope Corporation of America, Inc.'s ("Debtor") Emergency Motion to Compel the Missouri Division of Workers' Compensation ("Division") and Missouri Private Sector Individual Self–Insurers Guaranty Corporation ("Guaranty Corporation") to administer and pay pre-petition and post-petition workers' compensation claims.

The Court held an expedited hearing on the Debtor's Motion on September 16, 2003, at which time the parties announced that they had resolved all issues regarding the post-petition workers' compensation claims. With respect to the pre-petition workers' compensation claims, the Guaranty Corporation asserts that it is only required to pay compensation benefits if the injured workers properly and timely filed a proof of claim in the Debtor's bankruptcy, or otherwise preserved their rights as pre-petition claimants. The parties stipulated to the facts. The Court granted an expedited briefing schedule, and after reviewing the arguments presented by the parties, the Court is now prepared to rule.[1]

## I. BACKGROUND

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on May 15, 2002. Before filing bankruptcy, the Debtor was self-insured for its workers' compensation obligations, and had deposited $810,000.00 of collateral proceeds with the Guaranty Corporation pursuant to Missouri law. Immediately upon filing its bankruptcy petition, the Debtor sought and obtained an Order from this Court, on May 16, 2002, (Document No. 30) authorizing it to continue paying prepetition and post-petition workers' compensation claims "to the same extent such payments were made prior to" the filing date.[2]

---

1. Because of the critical nature of this issue to those injured employees who are receiving or awaiting medical treatment under the workers' compensation program, the Court has expedited its consideration and ruling in this matter.

2. Debtor's Emergency Motion for Order Authorizing Payment of Prepetition Wages, Salaries, Reimbursable Employee Expenses, Medical and Other Critical Prepetition Employee Expenses, ¶ 31. (Document No. 7)

Effective on May 12, 2003—almost one year to the day after it had filed this Chapter 11 bankruptcy—the Debtor obtained private insurance to cover its workers' compensation obligations and thereby ceased its existence as a self-insured entity. Accordingly, it discontinued direct payment on its workers' compensation claims. On June 24, 2003, in conjunction with the confirmation of the Debtor's Plan of Liquidation, the Court approved the sale of substantially all of the Debtor's assets to KPS Special Solutions Fund II, L.P., and its nominee, Blue Wire Acquisition Corp. (collectively "Blue Wire"). Pursuant to the Court's Order, Blue Wire agreed to pay $605,000.00 to the Guaranty Corporation to administer post-petition workers' compensation claims arising in the Debtor's self-insured period (i.e., between May 15, 2002, the date the Debtor filed bankruptcy, and May 12, 2003, the date it obtained private insurance). In return, the Guaranty Corporation agreed not to hold Blue Wire responsible for any of the Debtor's pre-petition, self-insured workers' compensation obligations.

When the Debtor filed its initial bankruptcy papers, it filed a Local Rule 2015 statement in which it listed 87 persons with pending, pre-petition workers' compensation claims. Those 87 claimants were not, however, listed on the Debtor's Schedule F—Creditors Holding Unsecured Claims. According to the Debtor's Brief, those 87 claimants eventually received notice that the bar date for filing a proof of claim was December 31, 2002; however, the notice did not advise the claimants that they should file a proof of claim to protect their status as compensation recipients, or to preserve their claims against the Guaranty Corporation or any other party that might be secondarily liable on the claims. Only 19 of the 87 claimants filed claims by the December 31 deadline. Upon learning of the Guaranty Corporation's present po-sition, the Debtor conducted a further review and discovered an additional 67 employees that had reported pre-petition, job-related injuries and might be potential claimants. These potential claimants were not included on the Debtor's Local Rule 2015 statement or in its bankruptcy schedules. Three of those claimants filed a proof of claim after the bar date. Thus, of the 154 total pre-petition workers' compensation claimants (or potential claimants), only 87 received formal notice and only 19 timely filed a proof of claim in the bankruptcy proceedings.

The Guaranty Corporation estimates that its potential liability for covering all of the Debtor's pre-petition workers' compensation claims exceeds $1,650,000.00, which is more than twice the amount of the Debtor's posted collateral of $810,000.00.

## II. DISCUSSION

The present impasse between the Debtor and the Guaranty Corporation places the pre-petition injured workers of the Debtor's former business in a predicament the Debtor is now out of business and no longer providing workers' compensation coverage, Blue Wire did not assume any liability for workers who were injured pre-petition, and the Guaranty Corporation—whose statutory purpose is to provide compensation coverage when a self-insured employer is bankrupt—refuses to provide coverage for any pre-petition injured employee that did not timely file a bankruptcy claim against the Debtor. While this dispute presents a problem not easy to resolve, the Court finds that the Debtor must amend its Schedule F to include all pre-petition injured workers as unsecured creditors and that the Guaranty Corporation must file a proof of claim on behalf of all the Debtor's pre-petition workers' compensation claimants.

The Guaranty Corporation advances two arguments in support of its position to deny coverage to the pre-petition injured workers. First, it asserts that the Court lacks jurisdiction to adjudicate the rights of the pre-petition injured workers and the Guaranty Corporation. Secondly, in the alternative, the Guaranty Corporation argues that it is not obligated to provide coverage to those workers who did not preserve their rights in the Debtor's bankruptcy proceeding—i.e., the Guaranty Corporation is seeking to deny coverage to the 135 injured workers who failed to timely file a proof of claim in the Debtor's bankruptcy.

## 1. Jurisdiction

The Guaranty Corporation argues that this matter is not a core proceeding over which the bankruptcy court can exercise jurisdiction because: 1) the rights, duties, and obligations of the Guaranty Corporation involve Missouri State law; 2) it involves pre-petition workers' compensation claims pending within the exclusive jurisdiction of the Missouri Division of Workers' Compensation; 3) the Debtor has the statutory right to appeal to the Division concerning any actions taken by the Guaranty Corporation; 4) the Division is uniquely situated to resolve matters involving the Guaranty Corporation's administration and payment of pre-petition claims; 5) the Debtor's administration of the bankruptcy case will not be affected by the Guaranty Corporation's administration and payment/non-payment of the pre-petition claims; 6) the pre-petition workers' compensation claims do not involve or affect property of the estate; and 7) the Debtor is seeking to impose jurisdiction on

the bankruptcy court not for itself, but on behalf of all pre-petition claimants.

 Federal district courts have jurisdiction over all civil actions arising under or related to Title 11 of the United States Code, 28 U.S.C. § 1334(b). The district courts, in turn, delegate administration of all cases arising under Title 11, and all core proceedings arising under Title 11, to the bankruptcy courts. 11 U.S.C. § 157(b). Congress provided a non-exclusive list of core proceedings in § 157(b)(2), and those proceedings are actions essential or basic to the administration of a bankruptcy case. In a core proceeding, a bankruptcy court may "enter appropriate [final] orders and judgments." § 157(b)(1). In a non-core proceeding, the bankruptcy court may only issue a final order by consent of the parties or by having the district court render a *de novo* review of the underlying facts and law. § 157(c). If a proceeding is non-core, the federal district court must also have original jurisdiction because the mere fact that a case is related to a proceeding under Title 11 is insufficient to confer federal jurisdiction on a case that otherwise arises under state law. 28 U.S.C. § 1334(c)(2).

 To the extent that the Guaranty Corporation may be arguing that this Court cannot actually adjudicate the workers' compensation claims, the Guaranty Corporation is correct. Under 28 U.S.C. § 157(b)(5), the bankruptcy court does not have jurisdiction to determine personal injury claims.[3] Moreover, this Court has no desire to hear and determine the workers' compensation claims; there are specialized administrative judges acting under state

---

**3.** *See Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108, 1113 (6th Cir.1981) (stating that Congress did not give the bankruptcy courts jurisdiction to adjudicate state workers' compen-

sation laws and Congress never intended that the bankruptcy proceedings be used to disrupt the orderly administration of the workers' compensation laws by the state).

law that are much better equipped to adjudicate such matters. This Court is not injecting itself into the administration of Missouri's workers' compensation laws; the claims of the pre-petition injured workers will be processed and administered by the Division of Workers' Compensation as if no bankruptcy had been filed.

The Guaranty Corporation's jurisdictional arguments in this case ignore the fact that the Debtor—as well as the creditors of the estate—have an interest in a potential refund of the funds that are now held by the Guaranty Corporation as security for payment of the Debtor's self-insured workers' compensation claims. Any unused portion of the security posted by a self-insured employer to the Division is potentially refundable to the employer under certain conditions. 8 CSR § 50–3.010(3)(F) ("When an employer ceases to be self-insured under Chapter 287, RSMo the employer may apply to the Division of Workers' Compensation for the release of the securities held in escrow or trust."). The Guaranty Corporation asserts that the $810,000.00 security it holds to administer the Debtor's workers' compensation claims is woefully inadequate considering its potential exposure of $1,650,000.00 in administering pre-petition claims. This argument belies the substance of the Guaranty Corporation's argument, discussed *infra*, that it only bears responsibility for covering those injured workers who filed a proof of claim or who otherwise preserved their rights in the bankruptcy proceeding. Of the 154 total workers' compensation claimants, whose cases are at issue here, only 19 filed a proof of claim. Thus, if the Guaranty Corporation were to be successful on the underlying merits, its potential exposure is likely far less than the $810,000.00 posted by the Debtor—since it would be providing coverage for only 19 persons, at most—and the Debtor may be entitled to recoup its excessive security pursuant to 8

CSR § 50–3.010(3)(F) for distribution to its creditors. Therefore, the Court has jurisdiction over this matter as a core proceeding under 11 U.S.C. § 157(b)(2)(E), (M) and (O) because it concerns property of the estate, it involves use of the estate's property (or potential property), and it involves adjusting the debtor-creditor relationship.

## 2. Payment of Workers' Compensation Claims by the Guaranty Corporation

Alternatively, the Guaranty Corporation contends that it is required by Missouri State law to deny payment of pre-petition workers' compensation claims unless the claimant timely filed a proof of claim or otherwise preserved his or her rights as a pre-petition claimant in the bankruptcy proceeding. The relevant Missouri Statute relied on by the Guaranty Corporation provides:

[T]he Guaranty Corporation is obligated for payment of compensation under this chapter to insolvent members' employees resulting from incidents and injuries to the extent of covered claims existing prior to the issuance of an order of liquidation against the member employer with a finding of insolvency which has been entered by a court of competent jurisdiction .... All incidents giving rise to claims for compensation under this chapter must occur during the year in which such insolvent member is a member of the guaranty fund and was assessable pursuant to the plan of operation ... and the employee must make timely claim for such payments according to procedures set forth by a court of competent jurisdiction over the ... bankruptcy proceedings of the insolvent member. Any proceeds derived by such claim of the employee in bankruptcy shall be an offset of any amounts due and owing to the employee under the

workers' compensation law. Any such obligation of the Guaranty Corporation includes only the amount due the injured worker or workers of the insolvent member under this chapter. In no event is the Guaranty Corporation obligated to a claimant in an amount in excess of the obligation of the insolvent member employer.

Mo.Rev.Stat. § 287.865.5.

Thus, pursuant to the language of the Missouri statute, the Guaranty Corporation asserts, an injured worker must first make a timely claim for payment in the Debtor's bankruptcy proceeding. In this case, the deadline for filing a timely claim was December 31, 2002, and only 19 of 154 pre-petition injured workers timely filed a proof of claim.

## A. Parties Secondarily Liable

█ It is well established that, as a matter of federal bankruptcy law, the right of a creditor to pursue a party secondarily liable despite the debtor's bankruptcy is preserved. 11 U.S.C. § 524(e) (stating that the discharge of the debtor does not affect the liability of another entity for such debt); *First Fidelity Bank v. McAteer (In re McAteer)*, 985 F.2d 114, 118 (3rd Cir.1993) (bankruptcy does not affect the liability of insurers); *Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.)*, 883 F.2d 970, 973 (11th Cir.1989) (stating that a surety who is secondarily liable to the obligee is not shielded by the obligor's bankruptcy). *Cf. Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 720–21 (S.D.W.Va. 1998) (concluding that the creditor could not pursue litigation against the debtor's insurer because it was only an excess insurer whose liability was not triggered until the debtor was "legally obligated to pay" and the debtor was responsible for all defense costs).

█ Certainly, in the Eighth Circuit, when a claim is disallowed in the bankruptcy proceeding, the debt is not recognized, and a party who is derivatively liable cannot be held responsible because the debtor was never principally liable for the debt. *Bursch v. Beardsley & Piper*, 971 F.2d 108, 114 (8th Cir.1992). In this case, however, the claims of the pre-petition injured workers have not been specifically disallowed by the Court; instead, the procedures for allowance or disallowance of the workers' compensation claims was committed to the discretion of the Debtor and its third-party workers' compensation administrator. Under this procedure, it was not necessary for the injured workers to file a claim in the bankruptcy proceeding to continue receiving workers' compensation benefits because the Debtor was operating under a court order to continue to provide coverage. In short, the pre-petition injured workers were lured into a false sense of security because their benefits continued after their former employer filed bankruptcy, and only later—after the deadline had passed for filing a proof of claim—did the pre-petition injured workers learn that the Guaranty Corporation did not intend to pay any claims in the event the injured worker failed to file a proof of claim. Accordingly, this is not a case where injured workers have invalid claims against the Debtor whereby the Guaranty Corporation would not bear any liability because the Debtor is not principally liable; rather, the injured workers have a valid claim against the Debtor because the Debtor assumed post-petition liability. The Guaranty Association, however, is seeking to deny coverage based on the workers' failure to register as unsecured creditors by filing a proof of claim

and sharing in the distribution of assets to the unsecured creditors.

## B. Adequate Notice for Filing a Proof of Claim

The Court finds it grossly unfair and inequitable to deny workers' compensation coverage to the pre-petition injured workers for their failure to file claims in the bankruptcy when they were not adequately notified of the need to file such claims. Allowed claims in a bankruptcy proceeding are those for which the a proof of claim is filed or those which are fixed by the debtor. 11 U.S.C. §§ 502(a), 521(1); Fed. R. Bankr.P. 3003(c)(2). Creditors are put on notice of the need to file a proof of claim because the debtor schedules the creditor's name, address, and amount of the debt in its bankruptcy petition. 11 U.S.C. § 521(1); Fed. R. Bankr.P. 1007(a). The bankruptcy clerk then gives the creditors notice of the deadline for filing proofs of claim. Fed. R. Bankr.P. 2002(f)(3). All unsecured creditors must file a proof of claim for their interest to be allowed when that claim is not scheduled by the debtor or if the claim is scheduled by the debtor as disputed, contingent or unliquidated. Fed. R. Bankr.P. 3002(a) and 3003(c)(2). On the other hand, a creditor who does not receive notice of a debtor's bankruptcy—and who does not have actual knowledge of the bankruptcy in time to permit a timely proof of claim—has its debt excepted from discharge. 11 U.S.C. § 523(a)(3).

In this case, the Debtor did not list any of the pre-petition injured workers in its bankruptcy schedules, and as a result they were not given notice that the Debtor—or the Guaranty Corporation now standing in the shoes of the Debtor—would require them to file a proof of claim in the bankruptcy or take other steps to protect their interests. Instead, the Debt-

or listed some 87 claims as "pending litigation" in its Local Rule 2015 statement. Although those 87 claimants were provided notice of the bar date for the filing of claims, they were never given notice that their claims would suddenly be terminated if they failed to file a proof of claim. Perhaps that explains why only 19 claimants timely filed a proof of claim. After it learned of the Guaranty Corporation's present position, the Debtor discovered an additional 67 persons who had reported pre-petition injuries and who never received any formal notice whatsoever of the debtor's bankruptcy, and therefore, quite obviously, did not file a proof of claim. Had all of these persons received notice, an examination of the Debtor's schedules would not have indicated whether their claims were being disputed, because their claims simply were not listed.

Moreover, an examination of the Court's file would have disclosed that the Court had entered an order on May 16, 2002, authorizing the Debtor to continue handling the pre-petition claims in the same manner as it had been handling the claims prior to the bankruptcy filing. Even if all of the claimants had received notice of the December 31, 2002, bar date for the filing of claims, they would have been justified in believing that they did not have to file a claim, because, for more than seven months after the filing of the bankruptcy, the workers' compensation claims were handled in the same way that claims were handled before the bankruptcy filing. Having already filed their injury claims, the claimants would have had no reason to think that they were required to file what would amount to an entirely new proof of claim as a condition of continuing to receive medical care and treatment and monetary benefits after confirmation of a plan of reorganization or liquidation that was many months down the road.

Furthermore, the Guaranty Corporation never filed a proof of claim in the Debtor's bankruptcy on behalf of the injured workers it was designed to protect. *See* Fed. R. Bankr.P. 3005(a) (allowing an entity that may be liable with the debtor to file a proof of claim in the name of the creditor). In hindsight, had the Guaranty Corporation timely filed a proof of claim, it could have received a four to seven percent payment on each compensation claim it assumed from a distribution of the Debtor's assets. The Guaranty Corporation had notice of the Debtor's bankruptcy through the Division, Mo.Rev.Stat. § 287.872.1, and was an active participant in the case. Instead of protecting injured workers by filing a proof of claim on their behalf, the Guaranty Corporation apparently decided to gamble under the belief that it could realize more cost-savings by springing a trap on the unwary, often unsophisticated worker who unwittingly failed to file a proof of claim after being lured into the belief that his or her compensation benefits would remain unaffected by their former employer's bankruptcy.

The Guaranty Corporation's position in this case is diametrically the opposite of Missouri state policy, as expressed by the General Assembly, which is aimed at assuring Missouri workers that they will be protected and covered for the injuries they suffer on the job, even if their employer becomes insolvent. As one Missouri court explained:

> Under § 287.800, [providing that "all of the provisions of this chapter shall be liberally construed with a view to the public welfare"] we are to give all provisions of the Workers' Compensation Act (the Act) such construction as will promote the public policy of extending its benefits to the largest possible class, provided such construction can be given without violating fixed rules or principles of law. The law is to be liberally construed with a view to the public welfare and in furtherance of the public policy that an employee is entitled to have compensation for any injury that is clearly job-related and arises out of and in the course of his employment. Accordingly, our courts consistently hold that in construction of the Act, any doubt or question as to the right of an employee to compensation shall be resolved in favor of the injured employee.

*Parrott v. HQ, Inc.,* 907 S.W.2d 236, 240 (Mo.Ct.App.1995) (citations and footnotes omitted).

More specifically, under Missouri's statutory scheme governing the activities of the Guaranty Corporation, the purpose of the Guaranty Corporation is "to compensate persons entitled to receive workers' compensation benefits from a Missouri self-insurer which is unable to meet its workers' compensation benefit obligation." Mo.Rev.Stat. § 287.865.2. The purpose of the Guaranty Corporation's Insolvency Fund is to meet "the obligations of insolvent members incurred while members of the Guaranty Corporation and after the exhaustion of all assets." § 287.867. In the present case, all of the assets of the Debtor have been exhausted through the Plan of Liquidation approved by the Court on June 24, 2003. The Plan of Liquidation called for the sale of all of the Debtor's assets, and in fact the Court entered a separate order at the same time approving the sale of the assets. The Guaranty Corporation did not object to the Plan or to the Debtor's motion to sell the assets on the grounds that there would be insufficient funds in the Debtor's collateral account to cover all of the pre-petition workers' compensation claims.[4]

---

4. The Court realizes that the Guaranty Corporation may not have enough funds to cover all

Nevertheless, Mo.Rev.Stat. § 287.865.5 requires that the injured worker file a timely claim for payment in the bankruptcy estate, which amount is offset by the Guaranty Corporation. Because the Guaranty Corporation's liability is coextensive with that of the Debtor, the Guaranty Corporation is like an excess insurer who is only liable to the extent the Debtor cannot pay. Logically, to help defray the burden assumed by the Guaranty Corporation, an injured worker is required to "make a timely claim for payment"—i.e., become an unsecured creditor of the estate in the hopes of receiving a distribution from the sale of assets, which amount is subtracted from the Guaranty Corporation's future compensation obligation. Although the pre-petition workers in this case had their claims allowed by the Debtor and its third-party administrator, those claims were not included in the list of unsecured creditors of the Debtor's estate and are not entitled to a distribution resulting from the sale of the Debtor's assets. Thus, under the plain language of the Missouri statute, when an injured worker fails to make a timely claim for payment, there is no "incident giving rise to claims for compensation" for which the Guaranty Corporation is obligated to pay.

It is difficult for this Court to find the appropriate words to express its distaste for the position taken by the Guaranty Corporation. It is quite simply, unconscionable. It spits in the face of the long-standing public policy of the State of Missouri to protect workers who suffer job-related injuries and then suffer the anguish and uncertainty that surely accompany the insolvency of their employer. It ignores the claims-handling procedures that were established by this Court in the earliest days of this Chapter 11 bankruptcy proceeding. It creates unnecessary and unjustified anxiety among those injured workers who are in need of continuing medical treatment. To accept and approve the position taken by the Guaranty Corporation would be contrary to the spirit of state and federal law, and would be grossly unfair and inequitable.

In this case, however, the failure of the Corporation, the Debtor, or of the individual injured workers with notice or knowledge of the bankruptcy proceeding to file a proof of claim does not mean that those individuals are now precluded from ever receiving workers' compensation benefits. Importantly, none of the pre-petition injured workers was listed on the Debtor's Schedule F. Pursuant to Fed. R. Bankr.P. 1009, a schedule may be amended by the Debtor as a matter of course at any time before the case is closed. This case is not closed. Allowing the debtor to amend Schedule F to include all pre-petition injured workers fulfills the requirement in Mo.Rev.Stat. § 287.865.5 that the injured workers share in a distribution of the Debtor's estate to the unsecured creditors; fulfills the requirement of the Corporation's Insolvency Fund that all the assets of the Debtor be exhausted before the Corporation assumes liability; and corrects any fundamental due process concerns held by the injured workers who may not have received adequate notice of the termination of their entitlement to compensation benefits.

the Debtor's pre-petition injured workers. Although the Guaranty Corporation only has $810,000.00 to cover its potential exposure of $1,650,000.00, the Court notes that not all claimants have compensation neurosis and not all claimants elect to undergo the knife instead of conservative treatment. The fact that the Guaranty Corporation may run out of funds in the future to cover all claimants, however, does not justify the Guaranty Corporation's actions in the instant matter. It is, after all, a "guaranty" corporation; i.e., an insurance company of sorts.

## III. ORDER

Therefore, it is

**ORDERED** that Wire Rope Corporation of America, Inc.'s Emergency Motion to Compel the Missouri Division of Workers' Compensation and Missouri Private Sector Individual Self–Insurers Guaranty Corporation to Administer and Pay Prepetition and Postpetition Workers' Compensation Claims be and is hereby GRANTED. It is

**FURTHER ORDERED** that Wire Rope Corporation of America, Inc. shall amend its Schedule F to include all prepetition workers' compensation claimants. It is

**FURTHER ORDERED** that the Missouri Private Sector Individual Self–Insurers Guaranty Corporation shall file a proof of claim on behalf of all the Debtor's prepetition workers' compensation claimants—who do not already have an allowed claim on or before October 20, 2003, and the failure to do so shall constitute a waiver of the requirement in Mo.Rev.Stat. § 287.865.5 that the employee first file such a claim before seeking recourse against the Insolvency Fund. It is

**FURTHER ORDERED** that the Missouri Division of Workers' Compensation and the Missouri Private Sector Individual Self–Insurers Guaranty Corporation shall administer and pay such claims as required by law. It is

**FURTHER ORDERED** that Wire Rope Corporation of America, Inc.'s request for another telephonic pre-trial conference and hearing date is DENIED.