FILED

DEC 10 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP Nos.   CC-14-1050-KiTaD |
| ) | CC-14-1059-KiTaD |
| EDWARD E. ELLIOTT, ) | (Consolidated) |
| ) | |
| Debtor. ) | Bk. No.   SV 11-23855-VK |
| ) | |
| _____ ) | |
| ) | |
| EDWARD E. ELLIOTT, ) | |
| ) | |
| Appellant, ) | |
| ) | **O P I N I O N** |
| v. ) | |
| ) | |
| DIANE C. WEIL, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 23, 2014,
at Malibu, California

Filed - December 10, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

_____

Appearances:     Andrew E. Smyth, Esq. of Smyth Law Office argued for appellant, Edward E. Elliott; Alla Tenina, Esq. of Tenina Law, Inc. argued for appellee, Diane C. Weil, Chapter 7 Trustee.

Before:   KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Debtor Edward E. Elliott ("Elliott") appeals an order sustaining the objection of appellee, chapter 7[1] trustee Diane C. Weil ("Trustee"), to his claimed homestead exemption under CAL. CIV. PROC. CODE § 704.730(a)(3). The bankruptcy court sustained Trustee's objection on the basis that Elliott had claimed the exemption in bad faith. Elliott contends that despite his misconduct, he is nevertheless entitled to the exemption due to an intervening change in the controlling law while this appeal was pending.

We conclude that Law v. Siegel, 134 S.Ct. 1188 (2014), has abrogated Ninth Circuit law such that unless statutory power exists to do so, a bankruptcy court may not deny a debtor's exemption claim or bar a debtor's exemption claim amendment on the basis of bad faith or of prejudice to creditors. Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998) (adopting test set forth in Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982)). However, a statutory basis may exist to deny Elliott's claimed homestead exemption. We VACATE and REMAND for further proceedings by the bankruptcy court.[2]

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] We exercised our discretion to review documents that were electronically filed in the bankruptcy court but were not included in Elliott's excerpts of the record. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Elliott filed a chapter 7 bankruptcy case on December 1, 2011.  On his bankruptcy petition, Elliott listed his address as Hiawatha Street.  On Schedules A and D, Elliott did not list any real property in which he had an interest or list any real property in which creditors held secured claims.  Elliott did not claim entitlement to a homestead exemption in his Schedule C and he did not list any ownership interest in an incorporated business on Schedule B.  Additionally, Elliott omitted certain judgment lien creditors (the "Judgment Creditors") who obtained a judgment against him in 2006 for fraud and negligent misrepresentation.

At the § 341(a) meeting of creditors, Elliott confirmed his address as Hiawatha Street and claimed that his bankruptcy petition, schedules and statement of financial affairs were true and complete.  Furthermore, Elliott asserted that he did not own any real property and had not transferred or given away anything of value in the last four years.

Based on the information disclosed in Elliott's bankruptcy schedules and corresponding testimony, Trustee issued a "No Distribution" report.  Elliott was granted a discharge on March 8, 2012, and the bankruptcy case was closed on March 13, 2012.

On March 26, 2012, Lee Wong Investments, Inc. ("LWI") transferred by quitclaim deed real property located in Los Angeles (the "Buckingham Property") to Elliott as a gift.  Elliott does not dispute that LWI is a Nevada corporation which he organized and controls.

Following this transaction, Elliott sent a letter to counsel for the Judgment Creditors, who were never informed of the

-3-

bankruptcy, stating that he acquired the Buckingham Property after the bankruptcy and demanding that their judicial liens be removed. This demand triggered an investigation by the Judgment Creditors, which revealed the history of Elliott's continuous interest in the Buckingham Property through numerous sophisticated transfers of title. The Buckingham Property was first transferred from Elliott to 1019 South Central Associates Ltd. ("S. Central"), a business that, according to information Trustee received from the California Secretary of State, was organized by the son of Elliott's deceased partner. This initial transfer occurred on August 14, 2006, just a few months after the judgment was entered against Elliott in the state court fraud case. Then, on February 13, 2007, S. Central transferred the Buckingham Property to LWI, the corporation organized and controlled by Elliott.[3] Finally, on March 26, 2012, the Buckingham Property was transferred back to Elliott in his individual capacity, following his discharge.

When the Judgment Creditors discovered Elliott's continuous interest in the Buckingham Property, they moved to reopen the bankruptcy case. The bankruptcy court granted their motion and ordered that the case be reopened.

Nearly one year after the bankruptcy case was reopened, Elliott amended his schedules to disclose his interest in the Buckingham Property. He valued the property at $360,000 and

---

[3] In her objection to Elliott's homestead exemption, Trustee provided records from the Nevada Secretary of State as evidence of Elliott's ownership interest in LWI, the company which held title to the Buckingham Property on the petition date. These records showed that when the Buckingham Property was transferred from S. Central to LWI, Elliott was LWI's president, treasurer and director.

-4-

indicated that Bank of America held a $120,826 secured claim against it.  He also claimed a homestead exemption for the Buckingham Property under CAL. CIV. PROC. CODE § 704.730(a)(3).

Trustee objected to Elliott's claimed homestead exemption on the basis of bad faith.  She outlined the pattern of affiliate transfers of the Buckingham Property to advance the proposition that Elliott never really relinquished control of it, but instead utilized these transfers to shield it from creditors, Trustee and the bankruptcy court.

In response, Elliott filed declarations from his friend Juanita A. Jehdian ("Jehdian") and his attorney Andrew E. Smyth ("Smyth").  Jehdian asserted that she currently lived at the Buckingham Property with Elliott.  Although she admitted not living there on the petition date, Jehdian claimed that she had frequently visited the Buckingham Property during the month of December 2011, and in doing so, knew that Elliott had "resided at the [Buckingham Property] in December 2011."  Smyth declared that Elliott "has a homestead exemption on file."  In support, Smyth attached a copy of a homestead declaration filed by Elliott with the state of California on October 18, 2005, where he claimed as a declared homestead the Buckingham Property.

In reply, Trustee refuted Elliott's suggestion that the 2005 homestead declaration protected his entitlement to a homestead exemption.  Specifically, Trustee argued that because Elliott did not hold title to the Buckingham Property on the petition date, he could not claim the homestead exemption.  Thus, Trustee maintained that notwithstanding Elliott's bad faith, the bankruptcy court could nevertheless sustain her objection on the basis that Elliott

was never entitled to a homestead exemption in the first place.

At the exemption hearing, the bankruptcy court sustained Trustee's objection to Elliott's claimed homestead exemption on the basis of bad faith. The court focused on: Elliott's failure to disclose his correct address as the Buckingham Property; his misleading testimony at the § 341(a) meeting; the suspicious timing of the property transfer following discharge; and Elliott's subsequent amendments claiming a right to exempt a property he had initially concealed. The court ultimately concluded that "this is not just about delay. This is about bad faith of a Debtor who misrepresented where he lives, who waited until after he got discharged to disclose his residency in the property, and this is not an appropriate use of the bankruptcy code." Hr'g Tr. (Jan. 9, 2014) 3:4-8.

The order denying Elliott's claimed homestead exemption was entered "on the basis that the debtor belatedly claimed the exemption in bad faith." Elliott timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). An order denying a debtor's claim of exemption constitutes a final order. Preblich v. Battley, 181 F.3d 1048, 1056 (9th Cir. 1999). Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the United States Supreme Court's decision in Law v. Siegel, entered while this appeal was pending, abrogate the bankruptcy court's "bad faith" basis for denying Elliott's claimed homestead exemption under CAL. CIV. PROC. CODE § 704.730(a)(3)?

-6-

2. Bad faith notwithstanding, is there a statutory basis to deny Elliott's claimed homestead exemption?

## IV. STANDARDS OF REVIEW

The right of a debtor to claim an exemption is a question of law we review de novo. Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003). The bankruptcy court's findings of fact with respect to a claimed exemption, including a debtor's intent, are reviewed for clear error. Id. Factual findings are clearly erroneous if illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

## V. DISCUSSION

### A. Exemptions generally

When a debtor files a bankruptcy petition, all of his assets become property of the estate and may be used to pay creditors, subject to the debtor's ability to reclaim specified property as exempt. Schwab v. Reilly, 560 U.S. 770, 774 (2010). "Exemptions serve to protect and foster a debtor's fresh start from bankruptcy." In re Rolland, 317 B.R. 402, 412-13 (Bankr. C.D. Cal. 2004).

A claimed exemption is "presumptively valid." Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). Once an exemption has been claimed, "the objecting party has the burden of proving that the exemptions are not properly claimed." Rule 4003(c); Gonzalez v. Davis (In re Davis), 323 B.R. 732, 736 (9th Cir. BAP 2005). Initially, this means the objecting party has the burden of production and the burden of persuasion. In re Carter, 182 F.3d at 1029 n.3. If the objecting party produces

-7-

evidence to rebut the presumptively valid exemption, the burden of production then shifts to the debtor to produce unequivocal evidence to demonstrate the exemption is proper. Id. The burden of persuasion, however, always remains with the objecting party. Id.

California has opted out of the federal exemption scheme and permits its debtors only the exemptions allowable under state law. CAL. CIV. PROC. CODE § 703.130. Therefore, while "the federal courts decide the merits of state exemptions, . . . the validity of the claimed state exemption is controlled by the applicable state law." In re Kelley, 300 B.R. at 16. California exemptions are to be broadly and liberally construed in favor of the debtor. In re Gardiner, 332 B.R. 891, 894 (Bankr. S.D. Cal. 2005); In re Rolland, 317 B.R. at 413.

Elliott contends he is entitled to apply the homestead exemption provided by CAL. CIV. PROC. CODE § 704.730(a)(3) to the Buckingham Property. That statute provides in pertinent part that a homestead exemption of $175,000 is allowed if:

> (3)  [T]he judgment debtor . . . who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:
>
> (A)  A person 65 years of age or older.
>
> (B)  A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment.
>
> (C)  A person 55 years of age or older with a gross annual income of not more than twenty-five thousand dollars ($25,000) or, if the judgment debtor is

married, a gross annual income, including the gross annual income of the judgment debtor's spouse, of not more than thirty-five thousand dollars ($35,000) and the sale is an involuntary sale.

CAL. CIV. PROC. CODE § 704.730(a)(3). Trustee objected to Elliott's claimed exemption both on the grounds that it was made in bad faith and that his statutory right to the exemption was destroyed prepetition due to his frequent title transfers with respect to the Buckingham Property. The bankruptcy court sustained Trustee's objection on the basis of bad faith, but did not address the alternative basis for denying the exemption on statutory grounds.

**B.   The effect of Law v. Siegel on the bankruptcy court's denial of Elliott's claimed homestead exemption based on his bad faith misconduct**

Elliott contends that Law v. Siegel, 134 S.Ct. 1188 (2014), has overruled the bankruptcy court's authority to deny his homestead exemption on the basis of bad faith. We agree.

Prior to being abrogated by Law v. Siegel, law within the Ninth Circuit gave a bankruptcy court the authority to deny an amended exemption claim if the trustee or another party in interest timely objected and showed, by a preponderance of the evidence, that the debtor had acted in bad faith or that the creditors had been prejudiced. In re Michael, 163 F.3d at 529 (adopting test set forth in In re Doan, 672 F.2d at 833; Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 630 (9th Cir. BAP 2010); Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000). Under this line of authority, a debtor's intentional attempt to conceal estate assets was a recognized basis to support a court's finding of bad faith and, thus, sufficient grounds to deny a debtor's claimed exemption.

-9-

When considering whether to deny Elliott's claimed homestead exemption, the bankruptcy court properly applied the equitable principles of the law available at the time to the facts it believed demonstrated Elliott's misconduct. At the exemption hearing, the court explained that Elliott's misconduct, established by his concealment of the Buckingham Property through omissions in his initial schedules, his misrepresentations at the § 341(a) meeting and his calculated title transfers, was sufficient to establish Elliott's bad faith. Therefore, the order denying Elliott's claimed homestead exemption in its entirety was well supported by valid Ninth Circuit precedents.

However, Law v. Siegel, entered on March 4, 2014, while this appeal was pending, abrogated our authority to deny exemptions or amendments to exemptions based on a debtor's bad faith. There, the Supreme Court considered whether the bankruptcy court could rely on § 105(a) to confer a general equitable power to surcharge the debtor's $75,000 homestead exemption to partially compensate the estate for over $500,000 in administrative expenses resulting from the debtor's bad faith conduct, which, in effect, amounted to a denial of his homestead exemption. 134 S.Ct. at 1194-95. The Supreme Court rejected such a remedy, finding that surcharging an exemption contravened specific provisions in the Bankruptcy Code, and no statutory basis in the Bankruptcy Code allowed for the surcharge on equitable grounds. Id. at 1195-96.

Specifically, the Court noted that the surcharge conflicted with two subsections of § 522: § 522(b), which allows a debtor to exempt estate property; and § 522(k), which expressly limits the use of exempt property to pay for administrative expenses. Id. at

-10-

1195.  The Court reasoned that § 522, with its "carefully calibrated exceptions and limitations," did "not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," such as the debtor's bad faith conduct.  Id. at 1196.  Furthermore, outside of § 522, the Code did not confer "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct."  Id.

Although the bankruptcy court's denial of Elliott's claimed homestead exemption did not involve precisely the same context of surcharging an exemption to pay administrative expenses as in Law v. Siegel, the same rationale that prohibited the equitable surcharge of exemptions in that case must also apply to the denial of amended exemptions based on Elliott's misconduct here.  The Code specifically provides that exempt property "is not liable" for the payment of "any [prepetition] debt."  Id. at 1192 (citing § 522(c)).  The bankruptcy court's denial of Elliott's homestead exemption allows the sale proceeds from the claimed homestead to pay prepetition debts.  However, under Law v. Siegel, the court cannot contravene the § 522(c) mandate in this way "absent a valid statutory basis for doing so."  Id. at 1196.

A debtor's bad faith is not a statutorily created exception to the exemption but rather is a judge-made exception under Ninth Circuit authority.  The Supreme Court has now mandated in Law v. Siegel that "[t]he Code's meticulous . . . enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."  Id. Accordingly, courts can no longer deny claimed exemptions or bar

-11-

amendments to exemptions on the ground that the debtor acted in bad faith, when no statutory basis exists for doing so. As such, despite Elliott's apparent bad faith, his claimed homestead exemption must stand absent some statutory basis for its denial. See also In re Arellano, 517 B.R. 228, 229-32 (Bankr. S.D. Cal. 2014)(containing comprehensive discussion of the impact of Law v. Siegel).

**C. A statutory basis to deny Elliott's claimed homestead exemption may exist.**

Although Law v. Siegel no longer allows the bankruptcy court to deny a debtor's claimed exemption based on bad faith conduct or prejudice to creditors, the Supreme Court has affirmed the principle that a "valid statutory basis" is sufficient grounds to deny a debtor's homestead exemption. 134 S.Ct. at 1196. Thus, in the case at bar, state law governing California's homestead exemption criteria and the Code's limitations on exemptions may provide another basis to deny Elliott's claimed homestead exemption in the Buckingham Property.

**1. California's criteria for homestead exemptions**

Trustee argues that even if the bankruptcy court's authority to deny Elliott's homestead exemption based on bad faith has been abrogated, Elliott is still not entitled to the claimed exemption because he did not have legal or equitable title to the Buckingham Property on the petition date. Specifically, Trustee asserts that Elliott's declared homestead exemption was destroyed by his conveyance of the Buckingham Property's title to a third party prepetition. While we agree with Trustee, Elliott's loss of the declared homestead is not dispositive of his right to a homestead

-12-

exemption under California law.

Two types of homestead exemptions exist in California: the declared homestead exemption governed by Article 5; and the automatic homestead exemption governed by Article 4. <u>In re Cumberbatch</u>, 302 B.R. 675, 678 (Bankr. C.D. Cal. 2003). The declared and automatic homestead exemptions are separate and distinct. <u>Katz v. Pike (In re Pike)</u>, 243 B.R. 66, 69 (9th Cir. BAP 1999). While the amount of both homestead exemptions is the same, the appropriate context for applying each differs. <u>Id.</u>

### a.  Declared homestead exemption

The protections of an Article 5 declared homestead exemption apply only in the context of voluntary sales. <u>In re Kelley</u>, 300 B.R. at 19. For a debtor to invoke the declared homestead exemption he must record a declaration stating that the residence is his principal dwelling. <u>See</u> CAL. CIV. PROC. CODE §§ 704.920, 704.930(a)(3). Once the declaration is duly recorded, the declared homestead exemption continues thereafter even if the debtor does not reside in the premises, <u>unless</u> the debtor has abandoned the declared homestead. <u>See In re Kelley</u>, 300 B.R. at 18 (emphasis added).

A declared homestead can be effectively abandoned or destroyed where title to all or a portion of the homestead property is transferred to a third party. <u>Knudsen v. Brock (In re Knudsen)</u>, 80 B.R. 193, 195 (Bankr. C.D. Cal. 1987)(debtor ceases to hold interest in declared homestead property for purposes of an Article 5 exemption when debtor conveys title of subject property to third party, and reconveying property from third party to debtor does not "automatically resurrect" homestead declaration).

-13-

First Trust & Sav. Bank of Pasadena v. Warden, 18 Cal.App.2d. 131, 134 (1936). Elliott's declared homestead for purposes of Article 5 was effectively abandoned or destroyed when he conveyed title to the Buckingham Property to S. Central in 2006; it was not resurrected by his reacquisition of title from LWI in 2012. Id.

Nevertheless, the California declared homestead exemption is inapplicable here. Elliott sought to exempt the Buckingham Property in the forced sale context of his bankruptcy case under CAL. CIV. PROC. CODE § 704.730(a)(3), not in the context of a voluntary sale, where the Article 5 declared exemption would apply. This contextual distinction is critical because even if Elliott's declared homestead exemption was not abandoned, an effective Article 5 exemption does not protect his interest in the Buckingham Property in the forced sale context of his chapter 7 bankruptcy. See In re Kelley, 300 B.R. at 20; In re Knudsen, 80 B.R. at 196–97.

Accordingly, the issue of whether Elliott's homestead declaration was abandoned or destroyed through prepetition title transfers is irrelevant because "[i]n the context of bankruptcy . . . [d]ebtor's declaration of homestead helps him not at all, as the additional benefits conferred in Article 5 would benefit him only in the situation of a voluntary sale." In re Kelley, 300 B.R. at 21 (emphasis in original).

Therefore, despite Trustee's correct assertion that Elliott's declared homestead exemption was destroyed prepetition, the issue of whether he is entitled to a homestead exemption must be assessed within the scope of the Article 4 automatic exemption.

-14-

### b. Automatic homestead exemption

The Article 4 protections for automatic homestead exemptions are applicable in a forced sale context. In re Kelley, 300 B.R. at 19. The filing of a bankruptcy petition constitutes such a "forced sale" to trigger the application of the automatic homestead exemption. Id. at 17. Distinct from the Article 5 exemption, once triggered, the automatic homestead exemption need not be memorialized or recorded in a homestead declaration. Wells Fargo Fin. Leasing, Inc. v. D & M Cabinets, 177 Cal.App.4th 59, 68 (2009).

Elliott has claimed entitlement to the Article 4 automatic homestead exemption by referencing CAL. CIV. PROC. CODE § 704.730(a)(3) in his amended Schedule C. Because Elliott's claim of exemption is presumed valid, Trustee had the burden to prove it was not properly claimed. See Rule 4003(c). Trustee argued that Elliott was not entitled to the homestead exemption because he could not claim an exemption in property he did not own on the petition date. However, for purposes of CAL. CIV. PROC. CODE § 704.730, Elliott's conveyance of the Buckingham Property's title to a third party does not defeat his right to an automatic exemption, because continuous residency, rather than continuous ownership, controls the Article 4 analysis.

The statutory definition of "homestead" for purposes of the Article 4 automatic exemption is set forth in CAL. CIV. PROC. CODE § 704.710(c) and "requires only that the judgment debtor reside in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead."

-15-

Tarlesson v. Broadway Foreclosure Invs., LLC, 184 Cal.App.4th 931, 937 (2010)(citing CAL. CIV. PROC. CODE § 704.710(c))(emphasis added). Thus, based on the plain language of the statute, the automatic homestead exemption does not require that the judgment debtor continuously own the property. See In re Donaldson, 156 B.R. 51, 52 (Bankr. N.D. Cal. 1993)(by continuously residing in their home throughout the bankruptcy proceeding, debtors retained a possessory interest sufficient to establish their right to an automatic exemption despite their loss of title in a prepetition foreclosure); Tarlesson, 184 Cal.App.4th at 937-38 (where judgment debtor conveyed her home's title to a related party, debtor's continuous occupancy of the property was enough to retain a sufficient equitable or beneficial interest in it to qualify as a homestead under § 704.710(c) and thus claim an automatic homestead exemption).

Accordingly, the automatic homestead exemption applies to any interest in the property if the debtor satisfies the continuous residency requirement set forth in CAL. CIV. PROC. CODE § 704.710(c).[4] The factors a court should consider in determining whether the debtor has sufficient residency to establish an exemptible interest in the property and, thus, to qualify for the automatic homestead, are physical occupancy of the property and

---

[4] This principle is consistent with and explicitly echoed in sections of Article 4 other than CAL. CIV. PROC. CODE § 704.730(c). For instance, CAL. CIV. PROC. CODE § 704.820 recognizes that debtors with less than a fee interest are still entitled to a homestead exemption under Article 4, stating in the Commission Comments it "implements the intent of [Article 4] not to restrict the interest of the judgment debtor for which a homestead exemption is available. A homestead exemption is available to a judgment debtor regardless of whether the judgment debtor's interest is a fee, leasehold, or lesser interest."

-16-

the intention with which the property is occupied.  <u>In re Kelley</u>, 300 B.R. at 21 (citing <u>Ellsworth v. Marshall</u>, 196 Cal.App.2d 471, 474 (1961)).

Neither Elliott nor Trustee directly addressed before the bankruptcy court, or address on appeal, whether Elliott's alleged residency at the Buckingham Property is sufficient to satisfy the continuous residency requirement to qualify for the automatic homestead exemption.  Trustee's objection focused on Elliott's bad faith in concealing the Buckingham Property and his destroyed declaration of homestead.  Neither party provided any relevant evidence to support a finding whether or not Elliott had satisfied the continuous residency requirement.  Thus, as it stands, nothing in the record confirms whether (1) Elliott resided at the Buckingham Property at the time the Judgment Creditors' lien(s) attached and continued to reside there with the intent of retaining it as his principal dwelling, and (2) whether he resided there on the petition date.  In fact, Elliott confirmed in his § 341(a) meeting testimony that he resided on Hiawatha Street on the petition date.

Because the bankruptcy court confined its inquiry to Elliott's bad faith in concealing the Buckingham Property, it did not make any factual findings relevant to whether Elliott satisfied the continuous residency requirement set forth in CAL. CIV. PROC. CODE § 704.730(a)(3).  Thus, material factual issues exist that the court must consider in making this determination, including the threshold determination that the Buckingham Property

-17-

is property of the estate.[5]  Accordingly, we must VACATE the order on appeal and REMAND to the bankruptcy court to resolve these factual issues and determine whether Elliott is entitled to an automatic homestead exemption under CAL. CIV. PROC. CODE § 704.730(a)(3).

### 2. The Bankruptcy Code's statutory limitations of exemptions

Even if on remand the bankruptcy court finds that Elliott retained, through continuous residency, a sufficient property interest in the Buckingham Property to qualify for the automatic homestead exemption under CAL. CIV. PROC. CODE § 704.730(a)(3), the Code provides additional limitations which may function as a basis to deny Elliott's exemption given his misconduct.

As the Supreme Court acknowledged in Law v. Siegel, "§ 522 sets forth a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct." 134 S.Ct. at 1196.  Most relevant among them for our purposes is § 522(g).

Section 522(g) limits the ability of a debtor to claim an exemption where the trustee has recovered property for the benefit of the estate.  Under § 522(g)(1), a debtor may claim an exemption where the trustee has recovered property under §§ 510(c)(2), 542, 543, 550, 551 or 553 only if (1) the property was involuntarily transferred, and (2) the debtor did not conceal the transfer or an

---

[5]  It is a "well settled rule that property cannot be exempted unless it is first property of the estate." Heintz v. Carey (In re Heintz), 198 B.R. 581, 586 (9th Cir. BAP 1996).  As discussed more thoroughly below, the bankruptcy court has since determined that the Buckingham Property is property of the estate.

-18-

interest in the property. <u>Hitt v. Glass (In re Glass)</u>, 164 B.R. 759, 761 (9th Cir. BAP 1994), <u>aff'd</u>, 60 F.3d 565 (9th Cir. 1995). Thus, the debtor is not entitled to claim an exemption "[w]here a debtor voluntarily transfers property in a manner that triggers the trustee's avoidance powers or the debtor knowingly conceals a prepetition transfer or an interest in property, and such property is returned to the estate as a result of the trustee's actions directed toward either the debtor or the transferee[.]" <u>Id.</u> at 764-65.

In his opening appellant's brief, Elliott identified § 522(g) as a basis for denying a homestead exemption for the type of misconduct involved here. However, he contends that "while it can be argued in this case that [he] did conceal the [Buckingham Property], this is not a case where the Trustee 'recovered' the property[,]" and therefore, § 522(g) is inapplicable. We disagree.

On June 4, 2013, Trustee filed a turnover action against Elliott for the Buckingham Property under § 542. <u>See</u> Adv. No. SV 13-01118-VK. Trustee has succeeded in that action.[6] Hence, this constitutes a "recovery" as contemplated by § 522(g), which then brings the Buckingham Property within the scope of the § 522(g)(1) limitation on Elliott's right to claim an exemption in

---

[6] While this appeal was pending, on April 7, 2014, the bankruptcy court entered a judgment revoking Elliott's discharge and vesting title of the Buckingham Property in Trustee after finding "the debtor knowingly and fraudulently failed to disclose a significant asset in his schedules, <u>i.e.</u>, the debtor's interest in a corporation that held title to his residence. For no consideration, less than three weeks after the debtor obtained his discharge, the debtor obtained title to his residence from that corporation." Adv. No. SV 13-01118-VK, dkt. no. 63 at 2, ¶ 1. No appeal has been filed.

-19-

property he voluntarily transferred and concealed.

The essence of Elliott's appeal in utilizing <u>Law v. Siegel</u> to shield his misconduct from functioning as lawful grounds to deny his homestead exemption has led to, as Trustee bluntly but accurately asserts, Elliott practically admitting he concealed the asset and acted in bad faith. Indeed, Elliott does not dispute that he failed to disclose his interest in the Buckingham Property in his original schedules. He admits claiming Hiawatha Street as his "street address" on his petition even though he knew he did not live there. Elliott further acknowledges that at the § 341(a) meeting he claimed his forms were true and complete, all the while knowing the bankruptcy court had no knowledge of the Buckingham Property he allegedly resides in and controlled through LWI.

Accordingly, we conclude that § 522(g)(1) is applicable and an important limitation on Elliott's claimed homestead exemption for the bankruptcy court to consider on remand.

### IV. CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's order sustaining Trustee's objection to Elliott's claimed homestead exemption and denying it in its entirety and REMAND for a determination of whether Elliott is entitled to a homestead exemption under CAL. CIV. PROC. CODE § 704.730(a)(3).

-20-