**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                    )    BAP No.   EC-16-1140-BJuTa
                                          )
RONALD J. SMITH and SUSAN M.              )    Bk. No.   1:10-bk-11054
SMITH,                                    )
                                          )
                 Debtors.                 )
                                          )
_____        )
                                          )
RANDELL PARKER, Chapter 7                 )
Trustee,                                  )
                                          )
                 Appellant,               )
                                          )
v.                                        )    **M E M O R A N D U M**[1]
                                          )
RONALD J. SMITH; SUSAN M.                 )
SMITH,                                    )
                                          )
                 Appellees.               )
_____        )

Argued and Submitted on March 23, 2017,
at Sacramento, California

Filed - April 24, 2017

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

_____

Appearances:     Phillip W. Gillet, Jr. argued for appellant Randell
                 Parker, Chapter 7 Trustee; David Max Gardner argued
                 for appellees Ronald and Susan Smith.

_____

Before:   BRAND, JURY and TAYLOR, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] trustee Randell Parker ("Trustee") appeals an order overruling his objection to debtors' claimed exemption under Cal. Civ. Code Proc. ("CCP") § 704.140. for settlement proceeds arising from a personal injury lawsuit. We AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    Events prior to the claimed exemption**

Debtors Ronald and Susan Smith ("Debtors") filed their chapter 7 bankruptcy case on February 2, 2010. Mr. Smith is a 100% disabled Vietnam veteran and is in his late 70s. Debtors neither listed any litigation claims in their original filing nor disclosed any such claims to Trustee. After Trustee issued a no-asset report, Debtors received their discharge on June 7, 2010, and the case was closed on June 11, 2010.

In October 2011, Mr. Smith signed a contingency fee agreement with attorneys ("PI Counsel") to represent him against the Roman Catholic Diocese of Helena for claims arising from childhood sexual abuse that occurred in the late 1940s.

After learning of the abuse claim in March 2013, the U.S. Trustee moved to reopen Debtors' case for the asset to be administered by the estate. The bankruptcy court reopened the case, and Trustee was appointed.

In September 2013, Trustee retained general counsel to assist him with settlement of the abuse claim and retained PI Counsel as special counsel to prosecute the abuse claim for the chapter 7 estate in accordance with the contingency fee agreement. The

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

bankruptcy court approved employment of both counsel on the agreed terms.

In January 2015, PI Counsel contacted general counsel and advised of a proposed settlement with the Diocese, which had since filed a chapter 11 bankruptcy case in Montana. PI Counsel recommended that Trustee vote in favor of the Diocese's proposed plan of reorganization, which incorporated the $15 million settlement agreement negotiated between the Diocese and 360 childhood sexual abuse claimants.

On February 4, 2015, general counsel filed a motion to compromise and approve the settlement. Trustee estimated that, based on a claim filed in Debtors' case for $5,782.90 and the estimated settlement range for the abuse claim of $20,000 to $40,000, the settlement would be sufficient to pay administrative expenses and all claims against the estate and to return a surplus to Debtors. However, Trustee acknowledged that intervening factors could change the calculation. For example, Debtors could file an allowed claim of exemption in the settlement proceeds. The bankruptcy court approved the settlement motion. General counsel then prepared and submitted a ballot accepting the Diocese's proposed chapter 11 plan.

In March 2015, Mr. Smith received a letter advising him that he would receive $39,752.98 (net) in settlement funds for his "physical injuries and the emotional injuries flowing from the physical injuries related to the abuse [he] suffered." PI Counsel then sent Trustee a letter with a copy to Mr. Smith regarding the settlement funds. The letter indicated that Mr. Smith was awarded $69,399.17 but would receive $39,752.98 after deducting

PI Counsel's fees and other costs.

In April 2015, PI Counsel filed its first and final application for compensation in Debtors' case, seeking $29,396.68. Debtors were served with the motion. The bankruptcy court approved the unopposed motion.[3]

In June 2015, general counsel received two settlement checks totaling $39,857.06. Various written communication followed among general counsel, PI Counsel and Trustee concerning the settlement, tax consequences and the residue amount owed to Mr. Smith. PI Counsel confirmed that Mr. Smith's claims were "personal injury claims and the amounts received by the claimants are for pain, suffering, anxiety, and general non-economic damages suffered by the claimants as a result of the abuse."

In August 2015, general counsel filed an application for compensation in Debtors' case, seeking $12,362.19 in fees and costs. Debtors objected, arguing that they should not have to pay the fees from their estate.

The bankruptcy court held a hearing on general counsel's fee application on October 7, 2015. Debtors appeared pro se. General counsel stated that after all expenses, Debtors would receive about $15,000. Mr. Smith stated that although Mrs. Smith is 60% disabled, she takes care of him and that they could use the settlement funds for their medical expenses. Mr. Smith then

---

[3] The contingency fee agreement contains an attorney's lien, which automatically perfected PI Counsel's lien against the settlement funds recovered for Mr. Smith under California law. Carroll v. Interstate Brands Corp., 99 Cal. App. 4th 1168, 1172-73 (2002). It appears then that Debtors must pay PI Counsel the amount agreed upon under their contract out of the recovered funds.

inquired about whether Debtors could receive the settlement funds if they proved they were needed to support their family. The court replied that exemptions were available which might allow Debtors to keep a portion of the funds and agreed to continue the hearing for two weeks to give Debtors an opportunity to discuss their exemption rights with an attorney. General counsel ultimately withdrew the fee application without prejudice.

**B.     Debtors' attempts to exempt the settlement funds**

Debtors, with the help of counsel, promptly filed amended Schedules B and C, listing the abuse claim and claiming the full amount of the settlement funds exempt under CCP § 703.140(b)(11)(A). Debtors contended they were entitled to the settlement funds because "[Mr. Smith] suffers from medical conditions and estimates a potential funeral for him will cost in excess of $12,000, not to mention what his wife will need to live without his financial contribution to the household after his death." Mr. Smith's unsigned declaration in support made no mention of any medical condition or financial need for the settlement funds. The bankruptcy court sustained Trustee's objection, ruling that the settlement funds arose from a tort claim rather than under a crime victim's reparation statute as required for an exemption under CCP § 703.140(b)(11)(A).

Debtors again amended their Schedule C, this time claiming the full amount of the settlement funds exempt for a personal injury under CCP § 704.140 (no subsection).[4] Debtors claimed the

---

[4] CCP § 704.140 provides, in relevant part:

(continued...)

-5-

funds were necessary "for constant medical needs and care." Trustee objected on two grounds: (1) Debtors had no financial need for the settlement funds; and (2) equitable estoppel and laches prevented them from amending their schedules. Trustee contended that for the settlement funds to be exempt under either CCP § 704.140(a) or (b), Debtors had to show they were "necessary for their support."

First, Trustee argued that the evidence showed the settlement funds were not necessary for Debtors' support, because Debtors' income was adequate to meet their expenses. While Debtors' Schedules I and J showed a net deficit of $383.50 per month, Trustee asserted that these numbers did not accurately reflect Debtors' financial circumstances. Trustee asserted that Debtors' monthly income was $4,300 rather than the $3,411 stated in the schedules based on Mr. Smith's testimony at his deposition in the abuse litigation and that tax expenses on Schedule J were overstated. Trustee argued that corrected Schedules I and J would have shown negative monthly income of only $20. Finally, Trustee challenged Debtors' contention that the funds were needed for medical expenses, noting that Debtors did not schedule any medical debts and that Mr. Smith had testified at his deposition that Debtors' own "stupidity" is what led to their bankruptcy filing.

---

[4](...continued)
(a) Except as provided in Article 5 . . . a cause of action for personal injury is exempt without making a claim.

(b) Except as provided in subdivisions (c) and (d), an award of damages or a settlement arising out of personal injury is exempt **to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor** (emphasis added).

-6-

In addition, he asserted that Debtors received free or low-cost medical care from the VA as a 100% disabled veteran; the VA's website stated that veterans with a disability rating of 50% or more receive free care. Moreover, he pointed out that because Debtors were over 65, they were eligible for Medicare. Lastly, Trustee argued that because Mr. Smith was receiving VA benefits, he and Mrs. Smith were entitled to VA burial benefits.

Secondly, Trustee argued that Debtors should be equitably estopped from claiming the settlement funds exempt because they were aware of Trustee's efforts to liquidate the abuse claim yet did not amend their exemptions until he and his attorneys had taken significant time, effort and expense to liquidate the claim. Trustee further argued that laches and waiver applied because of Debtors' unreasonable delay in claiming the exemption until all the work in the case was complete.

In response, Debtors disputed Trustee's equitable estoppel argument, contending that Trustee and his attorneys knew of the exemption and that Debtors (who were pro se until now) had the right to fully exempt the settlement proceeds. Had they encouraged Debtors to seek counsel earlier, Trustee and his counsel could have avoided undertaking further work. Debtors further claimed that since their bankruptcy case they had undergone many medical issues. Mr. Smith suffered from severe anxiety, diabetes, and a loss of hearing and eyesight. Thus, the settlement funds were necessary for his ongoing medical care. Although Mr. Smith admitted to testifying previously that he did not need the funds, things had taken a turn for the worse since then.

In his declaration in support, Mr. Smith stated that he and Mrs. Smith had foregone major dental work for the past seven years due to lack of funds to pay for it. Debtors also needed funds to replace their gas wall heaters that were removed due to a gas leak. Their current electric bill was $400/month because of running necessary electric heaters due to their medical conditions.

At the hearing, the bankruptcy court stated its preference for an evidentiary hearing given the arguments being raised. However, it was willing to allow the parties to waive their right and have the matter decided on the papers. The parties agreed to waive an evidentiary hearing and submit on the papers.

**C.    The bankruptcy court's ruling**

The court announced on the record its detailed findings of fact and conclusions of law, overruling Trustee's objection. It allowed Debtors' amendment to exempt the full amount of the settlement funds, $69,399.17, determining they had met their burden of proving the funds were necessary for their support under CCP § 704.140. After the court entered an order consistent with its oral ruling, Trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court err in determining that Debtors were not estopped from amending Schedule C to claim the settlement funds exempt?

2.    Did the bankruptcy court err in determining that the

-8-

settlement funds were necessary for Debtors' support?

**IV. STANDARDS OF REVIEW**

A debtor's right to claim an exemption is a question of law we review de novo. Elliott v. Weil (In re Elliott), 523 B.R. 188, 191 (9th Cir. BAP 2014). The bankruptcy court's interpretation of state exemption laws is reviewed de novo. Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 333 (9th Cir. BAP 2016) (citing Calderon v. Lang (In re Calderon), 507 B.R. 724, 728 (9th Cir. BAP 2014)). The bankruptcy court's findings of fact with respect to a claimed exemption are reviewed for clear error. In re Elliott, 523 B.R. at 191. Factual findings are clearly erroneous if illogical, implausible or without support in the record. Id. at 191-92 (citing Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)).

The court's decision whether to apply equitable estoppel is reviewed for an abuse of discretion. Leong v. Potter, 347 F.3d 1117, 1121 (9th Cir. 2003). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**V. DISCUSSION**

**A. Law governing exemptions generally**

When a debtor files a chapter 7 petition, all of the debtor's legal or equitable interests in property become property of the estate, subject to the debtor's right to reclaim certain property as exempt. Schwab v. Reilly, 560 U.S. 770, 774 (2010). Section 522 provides a default list of exemptions, but allows

-9-

states to opt out of the federal scheme and define their own exemptions. § 522(b)(2), (b)(3)(A), (d). California has opted out of the federal exemption scheme and permits its debtors only the exemptions allowable under state law. CCP § 703.130. The bankruptcy court decides the merits of state exemptions, but the validity of the exemption is controlled by California law. In re Diaz, 547 B.R. at 334 (citing LaFortune v. Naval Weapons Ctr. Fed. Credit Union (In re LaFortune), 652 F.2d 842, 846 (9th Cir. 1981)). California exemptions are to be broadly and liberally construed in favor of the debtor. In re Elliott, 523 B.R. at 192.

A debtor's exemption rights are determined as of the petition date. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012); Gose v. McGranahan (In re Gose), 308 B.R. 41, 45 n.7 (9th Cir. BAP 2004).

Generally, a debtor's claimed exemption is presumptively valid, and the objecting party has the burden of proving that the exemption is improper. In re Diaz, 547 B.R. at 336 (citing Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); Rule 4003(c)). However, where a state law exemption statute specifically allocates the burden of proof to the debtor, as California has done here, Rule 4003(c) does not change that allocation. Id. at 337; CCP § 703.580(b). Thus, as the bankruptcy court properly determined, Debtors had the burden to prove they were entitled to the personal injury exemption under CCP § 704.140.

**B.  Analysis**

**1.  The bankruptcy court did not err in determining that Debtors were not estopped from amending to claim the settlement funds exempt.**

Under Rule 1009(a), a debtor may amend his or her list of exemptions as a matter of course before a case is closed. See Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998); Goswami v. MTC Distrib. (In re Goswami), 304 B.R. 386, 393 (9th Cir. BAP 2003) ("[F]or the purposes of filing amendments, there is no difference between an open case and a reopened case, and [a debtor in a reopened case does] not need the court's permission to amend.") (citation omitted).

Although Law v. Siegel, 134 S.Ct. 1188 (2014), mandates that the bankruptcy court lacks federal authority to disallow an amended exemption or to deny leave to amend an exemption based on a debtor's bad faith or prejudice to creditors, it does recognize that, when a debtor claims an exemption created under state law, the scope of the exemption is determined under state law which "may provide that certain types of debtor misconduct warrant denial of the exemption." Id. at 1196-97.  Here, this could include any equitable doctrines under California law to disallow an amended exemption, including equitable estoppel and laches. Gray v. Warfield (In re Gray), 523 B.R. 170, 175 (9th Cir. BAP 2014); In re Lua, 529 B.R. 766, 775 (Bankr. C.D. Cal. 2015).

Trustee had the burden to prove that equitable estoppel applied with respect to Debtors amending their exemptions. Domarad v. Fisher & Burke, Inc., 270 Cal. App. 2d 543, 556 (1969). To invoke equitable estoppel under California law, a party must show:  "(a) a representation or concealment of material facts;

-11-

(b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." Simmons v. Ghaderi, 44 Cal. 4th 570, 584 (2008). The existence of an estoppel is generally a question of fact for the trier of fact, and ordinarily the trial court's determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts. J.P. v. Carlsbad Unified Sch. Dist., 232 Cal. App. 4th 323, 333 (2014).

Trustee contends the bankruptcy court erred in finding that Debtors were not equitably estopped from amending to claim the settlement funds exempt. The court found that Debtors were not equitably estopped from amending because they were acting pro se and did not know of their right to exempt the funds until the court apprised them of it at the October 7, 2015 hearing. Thus, the "knowledge of the facts" element of equitable estoppel was not met. The question is whether or not this finding is supported.

Trustee contends that because Debtors knew they had a right to exempt certain property on the petition date, which they did in their initial Schedule C, they knew that they could exempt the settlement funds as well. The record does not support Trustee's contention, but it does support the bankruptcy court's finding. The record reflects that Debtors did not learn of their right to exempt the settlement funds until sometime just before or at the October 7, 2015 hearing, where they first asked the court about it. Because Trustee's contention is not the only conclusion that can be reasonably drawn from the facts, the court's finding that

-12-

Debtors lacked knowledge of the facts is binding. Carlsbad Unified Sch. Dist., 232 Cal. App. 4th at 333.

In addition, Trustee's argument fails because he was not "ignorant of the truth." This element requires that the party asserting equitable estoppel not only lacked actual knowledge of the true facts, but also did not have notice of the facts sufficient to put a reasonably prudent person on inquiry notice. Life v. Cnty. of L.A., 227 Cal. App. 3d 894, 902 (1991). Trustee asserts that he did not know Debtors would seek to exempt the settlement funds at the 11th hour. However, Trustee conceded in his settlement motion in February 2015, after a significant amount of work had already been done respecting the settlement, that Debtors could possibly claim the funds exempt. Thus, he was more than on "inquiry notice" that Debtors could still at some point after February 2015 seek to exempt the funds; he actually foresaw that they might. Accordingly, the bankruptcy court did not abuse its discretion in not applying equitable estoppel to Debtors' amended exemption for the settlement funds.

The bankruptcy court also rejected Trustee's laches argument, finding that Debtors did not engage in unreasonable delay; they first learned about their exemption right in the settlement funds on October 7, 2015, and filed their amended Schedule C claiming the funds exempt on October 26, 2015, some nineteen days later. Because application of laches is discretionary, the standard of review on appeal is whether the trial court properly found (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. Pres. Coal., Inc. v. Pierce, 667 F.2d 851, 854 (9th Cir. 1982).

-13-

Although raised in his brief, Trustee fails to articulate how the bankruptcy court erred in finding that laches did not apply. He contends only that it was unreasonable for Debtors to sleep on their rights for two-and-a-half years while he labored to liquidate and settle the abuse claim. However, as already noted, Trustee acknowledged in his settlement motion in February 2015 that Debtors could still amend to exempt the funds, which would change the distribution scheme. Thus, at most, Debtors waited eight months to amend. In any event, the record supports the bankruptcy court's finding; it did not abuse its discretion in determining that laches did not bar Debtors from amending to claim the settlement funds exempt.

**2. The bankruptcy court did not err in determining that the settlement funds were necessary for Debtors' support.**

Debtors claimed the settlement funds were exempt proceeds of a personal injury claim under CCP § 704.140 but failed to list whether their claim was made under subsection (a) or (b). The bankruptcy court recognized that regardless of the subsection claimed, Debtors had to demonstrate that the settlement funds were "necessary for their support." In re Gose, 308 B.R. at 48.

Noting that the case was a "difficult" and "close one," with "thin" evidence from Debtors, the bankruptcy court found that Debtors had met their burden of proving that the entire amount of the settlement funds was necessary for their support. The court acknowledged that while exemption rights are determined as of the petition date, it believed that the word "necessity" in the statute requires a "forward-looking" consideration of the debtor's needs. Trustee does not dispute the court's interpretation.

-14-

The bankruptcy court stated four reasons why the settlement funds were necessary for Debtors' support. First, although Mr. Smith's declaration was conclusory and amounted to one sentence, the court accepted his statement that Debtors needed the funds for their support. Second, Debtors' income and expenses indicated financial need. The court noted the negative projected disposable income in Debtors' Schedules I and J of -$383.50. The court gave no weight to Mr. Smith's deposition testimony that his monthly income was $4,300; Debtors' stated monthly income in their Schedule I of $3,411 was more persuasive. The court found that Debtors had also understated their monthly expenses. Mr. Smith stated that Debtors paid $400 monthly for electric, but their Schedule J showed electric and heating fuel of only $160 per month. Debtors' stated monthly home maintenance expense of $45 was "very very low" for a $200,000 home, and it failed to account for the cost to replace the needed wall heaters. Debtors had also not accounted for any necessary personal hygiene or pet expenses. Finally, Debtors had understated their monthly medical and dental expenses at $150, when both of them needed major dental work and Mr. Smith has diabetes.

As for Trustee's argument that Debtors had overstated their property taxes, the court found Trustee's $502/year figure inaccurate because of an incorrect date, and it disregarded as hearsay his $450/year figure. The court also disregarded as hearsay Trustee's exhibits of the VA website printouts indicating that Mr. Smith may receive free healthcare and that website's information as to Debtors' entitlement to a free burial. Moreover, Trustee had not shown that Mr. Smith actually met the

conditions for a free burial from the VA.

Thirdly, the bankruptcy court found that Debtors were below median debtors, at 63% of the median income for a household of two, which also supported necessity. And fourth, Debtors had modest assets, including little equity in their home and few personal property assets consisting of older vehicles and $2 in their bank account on the petition date.

Trustee assigns several errors with the bankruptcy court's findings on necessity. Each of his arguments lack merit.

First, Trustee argues that in order to claim the settlement funds exempt, Mr. Smith had to show that he suffered a "physical injury." Trustee never raised this argument before the bankruptcy court, and he cites no authority for his position. In any event, the record reflects that Mr. Smith received the settlement funds on account of "physical injuries and the emotional injuries flowing from the physical injuries related to the abuse [he] suffered." Even if the funds were only to compensate Mr. Smith for his emotional distress, which no one disputed he suffered from, emotional distress damages fall within the "personal injury" requirement under CCP § 740.140. Sylvester v. Hafif (In re Sylvester), 220 B.R. 89, 92-93 (9th Cir. BAP 1998).

Trustee next contends the bankruptcy court erred in finding that Debtors were not aware of their exemption right in the settlement funds until October 2015. The evidence contradicts Trustee's argument. While Debtors were aware of the abuse claim before that time, the record shows they did not learn about their exemption rights in the settlement funds until just before or at the October 7, 2015 hearing.

-16-

Next, Trustee argues that the bankruptcy court erred by considering Mr. Smith's "unsworn" declaration with his conclusory statements, by assuming statistical evidence and by speculating about expenses not before the court. Trustee also faults the court for ignoring Mr. Smith's deposition testimony that Debtors' income had increased since the petition date. Although Trustee repeatedly states that Mr. Smith's declaration was unsworn, that is untrue. The operative declaration in support of Debtors' second attempt to exempt the settlement funds was sworn. And as for Mr. Smith's conclusory statements, the court acknowledged that Debtors' evidence was "thin" and that it was a close case. We cannot say it was clearly erroneous for the court to choose Mr. Smith's conclusory testimony over Trustee's evidence. See Anderson v. Bessemer City, N.C., 470 U.S. 564, 573-75 (1985); Ng v. Farmer (In re Ng), 477 B.R. 118, 132 (9th Cir. BAP 2012) (if two views of the evidence are possible the trial judge's choice between them cannot be clearly erroneous).

To the extent Trustee contends the court erred by reviewing Debtors' Schedules I and J, Trustee specifically asked the court to take judicial notice of those documents, which it did. In reviewing them, the court determined that Debtors had understated their expenses. Trustee cites no authority for why the court could not consider this fact in its determination of whether the settlement funds were necessary for Debtors' support. As for the "statistical evidence" the court considered, we assume Trustee means Debtors' median income on the petition date. We fail to see how the court's consideration of this fact was clearly erroneous. On the petition date, Debtors were significantly below the median

-17-

income for a household of two in California, which at the time was $64,080.78/year. Finally, the court did not "ignore" Mr. Smith's testimony about Debtors' increased income; it merely did not find it persuasive. Notably, even if the court accepted Mr. Smith's testimony that Debtors' income was now $4,300 per month, that equates to $51,600/year, which is still below the median.

Trustee next argues that the court erred by not considering the website printout evidence he presented regarding Debtors' property taxes and their qualification for free healthcare and death benefits. As for a portion of the property tax evidence from the county's website and the evidence from the VA's website indicating that veterans with a 50% or greater disability receive free healthcare, the court sua sponte rejected the website printouts based on hearsay. FRE Rule 801(c). We review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. Mbunda v. Van Zandt (In re Mbunda), 484 B.R. 344, 351 (9th Cir. BAP 2012).

Trustee does not dispute that the website printouts here meet the definition of hearsay; they consisted of statements made outside of court and were offered to prove the truth of the matter asserted. While some courts have found that information posted on the website of a government entity may qualify as a public record or report under FRE 803(8),[5] Trustee neither made such argument

---

[5] See EEOC v. E.I. DuPont DeMours & Co., 2004 WL 2347559, at *1 (E.D. La. Oct. 18, 2004), aff'd, 480 F.3d 724 (5th Cir. 2007) (holding that data from U.S. Census Bureau website qualifies as a public record); Chapman v. S.F. Newspaper Agency, 2002 WL
(continued...)

-18-

nor laid any foundation for this hearsay exception. He also cites no controlling authority providing that the court was precluded from excluding the website printouts on the basis of hearsay, sua sponte or otherwise. Moreover, had the court considered Trustee's property tax evidence, at best it would have shown that Debtors had a **smaller** negative balance for their monthly disposable income. As for the VA death benefit printouts, the court found that in addition to the hearsay problem, Trustee had failed to show whether Mr. Smith was even eligible for a free burial. Trustee does not contest this finding, which is supported by the record.

Finally, Trustee argues that the court erred by limiting the relief in this case to an "all or nothing" result because of Trustee's implied argument that Debtors' claimed exemption for the settlement funds should be disallowed entirely. Trustee contends that despite his prayer for relief, the court was required to find the funds were exempt (1) in full, (2) in part or (3) not at all. Trustee's argument that Debtors' exemption should be disallowed was far from implied. He argued that none of the settlement funds were necessary for their support or that they should be forfeited on some equitable basis. For these reasons, the court found that Trustee's all or nothing prayer for relief was a "false dichotomy," in that CCP § 704.140 restricts the exemption "to the

[5](...continued)
31119944, at *3 (N.D. Cal. Sept. 20, 2002) (holding that printout from U.S. Postal Service website is admissible as a public record); Johnson-Wooldridge v. Wooldridge, 2001 WL 838986, at *4 (Ohio App. July 26, 2001) (holding that printouts from the state board of education website were admissible as public records).

-19-

amount necessary" for the support of the debtor, spouse and dependents. Nonetheless, since the parties had limited the relief in this manner, the court opted to rule on the issue that way and not attempt to decide whether some part of the funds were necessary for Debtors' support.

Trustee complains the court cited no authority to support its position that a court should limit its relief in a way that is inconsistent with the statute because of some perceived wrong manner of asking for relief. However, Trustee fails to cite any California authority requiring the court to go outside the requested relief in this case. Trustee set forth no evidence or even argument as to what amount of the settlement funds Debtors could exempt, if anything less than the full amount was appropriate. Thus, in order to apportion the funds as Trustee contends, the court would have had to choose a number out of thin air, which it declined to do.

Absent any contrary evidence from Trustee, the bankruptcy court did not err by construing the personal injury exemption in favor of Debtors and allowing the full amount of the settlement funds exempt.

**VI. CONCLUSION**

For the foregoing reasons, we AFFIRM.